CALVERT DISTILLERS CORPORATION, Plaintiff, *v.* NUSSBAUM LIQUOR STORE, INC., Defendant.*

SEAGRAM DISTILLERS CORPORATION, Plaintiff, *v.* NUSSBAUM LIQUOR STORE, INC., Defendant.

Supreme Court, Special Term, New York County, January 19, 1938.

---

* See, also, *Port Chester Wine & Liquor Shop, Inc.,* v. *Miller Bros. Fruiterers. Inc.* (253 App. Div. 188).

_White & Case_ [_Joseph M. Hartfield, L. A. Janney, Orison S. Marden, Ezra Cornell_ and _Thomas Kiernan_ of counsel], for the plaintiffs.

_Weisman, Celler, Quinn, Allan & Spett_ [_Samuel S. Allan, Elmer F. Quinn, Ralph H. Wiener_ and _Edmund P. Silver_ of counsel], for the defendant.

_Leon Lauterstein_ [_Melbourne Bergerman_ of counsel], for R. H. Macy & Co., Inc., as _amicus curiæ_.

SHIENTAG, J.    These two suits are brought under section 2 of the New York Fair Trade Act (known as the Feld-Crawford Act), enacted by chapter 976 of the Laws of 1935, for injunction restraining the defendant, a retail liquor dealer, from selling branded products distributed by plaintiffs at prices below those fixed by existing so-called fair trade agreements entered into in this State between the plaintiffs and most of the retail liquor dealers.    No such contract, however, was signed by the defendant.

Section 1 of the act legalizes contracts fixing the resale price of any commodity which is in fair and open competition with commodities of the same general class produced by others, and which bears the trade mark, brand or name of the producer or owner of the product.*

There may be resales in disregard of the fixed prices in three excepted cases: sales of discontinued goods, sales of damaged goods, and order of the court.†

Section 2 provides that " wilfully and knowingly advertising, offering for sale or selling " any commodity by any one, whether he

---

* " § 1, subd. 1. No contract relating to the sale or resale of a commodity which bears, or the label or content of which bears, the trade mark, brand, or name of the producer or owner of such commodity and which is in fair and open competition with commodities of the same general class produced by others shall be deemed in violation of any law of the State of New York by reason of any of the following provisions which may be contained in such contract: (a) That the buyer will not resell such commodity except at the price stipulated by the vendor.    (b) That the vendee or producer require in delivery [_sic_] to whom he may resell such commodity to agree that he will not, in turn, resell except at the price stipulated by such vendor or by such vendee."

† " 2. Such provisions in any contract shall be deemed to contain or imply conditions that such commodity may be resold without reference to such agreement in the following cases: (a)  In closing out the owner's stock for the purpose of discontinuing delivering any such commodity.    (b)  When the goods are damaged or deteriorated in quality, and notice is given to the public thereof.    (c)  By any officer acting under the orders of any court."

is or is not a party to any contract fixing the resale price, at less than the price fixed by any contract entered into pursuant to section 1 of the act " is unfair competition and is actionable at the suit of any person damaged thereby."*

The statute provides no means of enforcement other than an action by private persons who are " damaged," and there is no other statutory penalty for non-observance of fixed prices. No new State agency was created, nor was any existing agency authorized to enforce this law.

Similar legislation has been enacted in upwards of forty States, the court is informed. The New York act was copied from a California statute, and even some meaningless words found in the California law have been carried over without change into section 1 of our own statute.†

The constitutionality of the act has in its essential features been upheld by the United States Supreme Court (*Old Dearborn Distributing Co.* v. *Seagram Distillers Corp.*, 299 U. S. 183; 57 S. Ct. 139; *The Pep Boys, Manny, Moe & Jack,* v. *Pyroil Sales Co.*, 299 U. S. 198; 57 S. Ct., 147) and by the Court of Appeals (*Bourjois Sales Corp.* v. *Dorfman*, 273 N. Y. 167).

The legislation is broad in its terms. Instead of formulating certain general rules and leaving them to some administrative agency after careful scientific investigation, to interpret and apply under varying conditions, the Legislature in this instance has laid down broad general principles and put the burden of interpretation directly on the courts at the instance of private litigants. Naturally, the more general and indefinite the legislative mandate, the wider will be the opportunity for judicial construction and, obviously, for judicial difference — a situation which must have been anticipated when this type of statute was enacted. To paraphrase an observation made recently by a thoughtful student of the problem, the statute was in substance a prayer to the courts to deal with the problem of " resale price maintenance " as best they could in the light of such limited recognition and study as the Legislature could give to the claims of the conflicting interests involved. (Landis, Business Policy and the Courts, [1937] 27 Yale Rev. 235.)

With the economic soundness or wisdom of the statute the courts are not concerned. It expresses a new business policy by the law-

* " § 2. Wilfully and knowingly advertising, offering for sale or selling any commodity at less than the price stipulated in any contract entered into pursuant to the provision of section one of this act, whether the person so advertising, offering for sale or selling is or is not a party to such contract, is unfair competition and is actionable at the suit of any person damaged thereby."

† So section 1, subdivision 1 (b) contains the words " in delivery " for " any dealer." " However, the mistake will doubtless be rectified by the courts." (The Fair Trade Laws [1936], 36 Col. Law Rev. 293, 296, 300.)

making body of the State. It is not to receive such a narrow or strict judicial construction as virtually to destroy its purpose. Rather is it to receive a judicial construction designed to carry out that new policy, to effectuate its primary purpose, and to eliminate or to minimize, as far as possible, any hardship or inequity that may result from its application. Experience may show the need for amendments to the statute, or the necessity for the creation of an administrative agency charged with its enforcement. Those, however, are matters for the Legislature, although it may not be amiss to say that so many difficulties have already presented themselves as to warrant, if indeed not to demand, prompt and thorough investigation and study by some appropriate governmental agency.

The attitude of the courts, however, must not be one of hostility to the new law as " an alien intruder in the house of the common law, but a guest to be welcomed and made at home there as a new and powerful aid in the accomplishment of its appointed task of accommodating the law to social (and, it may be added parenthetically, business) needs." (Stone, The Common Law in the United States, [1936] 50 Harv. Law Rev. 4, 15.)

The act under consideration is entitled " An Act to protect trade mark owners, distributors and the public against injurious and uneconomic practices in the distribution of articles of standard quality under a distinguished trade mark, brand or name." The statute should be construed to effectuate its complete purpose, which is not alone to protect the owners of the brands, but also to protect the retailer and the consuming public as well. In construing and enforcing the statute, therefore, equitable principles must be applied suitable to the nature and purpose of the law involved. If the power conferred by the statute upon producers and owners to fix and enforce retail selling prices is not subject to equitable restrictions and safeguards imposed by the courts, then every retailer must hold his business life at the sufferance of producers and owners who may act arbitrarily and who may be actuated by favor or caprice. If equitable restrictions and safeguards may not be applied by the courts, then, instead of being a " Fair Trade Act " the statute would become an act to permit unfair trade and business practices.

Without detailed discussion, and applying the principles heretofore outlined, I shall formulate briefly the rules which I deem to be directly applicable to the issues raised in the pending litigation:

1. The suit may be instituted by the owner or holder of the brands or marks or by one having the exclusive right to use such marks in a given territory.

2. The resale price sought to be maintained must be a fixed price or a stipulated price, not merely a price suggested or recommended by the owner or producer.

3. Notice of the fixed prices of the changes thereof must be given to all who are sought to be bound thereby, and this applies not alone to direct changes in prices, but also to changes in discounts and other general business practices reflected in the price of the commodity.

4. To invoke the Fair Trade Act it is unnecessary that agreements providing for the maintenance of fixed resale prices be made with all or substantially all of the dealers in a commodity. It is enough if there are agreements made, indicating an intention to resort to the provisions of the act. Nor is it necessary for the owner or producer to sell directly to the retailer; he may deal with a wholesaler who in turn sells to the retailer.

5. A dealer who does not sign a price maintenance agreement is just as amenable to the act as the one who does sign. Before any relief may be obtained against him, however, it must appear that he had notice of the fixed prices and of all changes thereof at the time of sale.

6. Implicit in the statute is the requirement that the prices fixed for resale by retailers be uniform in any one competitive area. Implicit also is the requirement that there shall be no unfair discrimination in prices to retailers. That does not preclude discounts or fair variations in prices having a general application in the trade based, for example, upon quantity sold or time of payment.

7. A producer or owner invoking the statute is not required as a matter of law to resort to legal process against every violator of its provisions or of the contracts made pursuant thereto before he can enforce a remedy against any one violator. ( See *National Distillers Products Corp.* v. *Columbus Circle Liquor Stores, Inc.*, N. Y. L. J. Jan. 18, 1938, p. 272, per STEUER, J.) At least where he does not resort to legal action, the producer is required to use reasonable diligence to see to it that none of his products continue to be sold to a retailer who cuts prices after the producer has notice of such violation. In the last analysis it all comes down to a question of whether the producer or owner by his acts or conduct, whether of commission or omission, may be said to have waived or abandoned his rights, with respect to all retailers, under the statute or agreements made thereunder. He will not be allowed directly or indirectly to discriminate unfairly. In availing himself of the benefits of the statute he must accept its burdens. The Fair Trade Act in its very essence calls for uniform enforcement without discrimination or favoritism. The producer cannot act arbitrarily in enforcing observance of fixed prices. There must be a sincere and diligent effort to prevent price cutting of branded products through legal process if necessary.

8. A dealer not signing a fair trade agreement may not take advantage of the producer's alleged breach of contracts made with others

unless those violations amount to improper discrimination, unfair business practices or indicate an acquiescence in the unlawful cutting of prices or a waiver or abandonment of rights under the statute.

9. The only practical method of securing any kind of enforcement of the statute as now drawn is by way of injunctive relief. To obtain such relief under the statute it is unnecessary, generally speaking, for the owner or producer to prove the actual damage sustained. It is sufficient to establish that there is in existence a " good will " to be protected and injury thereto will ordinarily be presumed if there is unlawful price cutting.

Without discussing the evidence in these cases it is sufficient to hold that the plaintiff in each case has met the requirements above outlined. The plaintiffs in both cases have established all of the facts required to be shown in order to entitle them to the benefits of the Fair Trade Act. They have not substantially violated any express or implied provision of that statute, and since defendant's violations of section 2 of the act have been clearly shown, it follows that injunctions should issue in both cases. Damages have been waived. Settle findings of fact, conclusions of law and judgment on notice. Exception to the defendant.