## Lentheric, Inc., v. F. W. Woolworth Company

*Murdoch, Paxson, Kalish & Green*, for plaintiff.
*Harold B. Beitler*, for defendant.

BROWN, J., June 19, 1939. — This bill in equity was brought to restrain alleged violation of the Pennsylvania Fair Trade Act of June 5, 1935, P. L. 266.

Plaintiff avers that it is a manufacturer of perfume products which bear its name, brands and trade-marks, and which are in fair and open competition with commodities of the same general class produced by others; that under the provisions of the act, it entered into contracts with certain retailers in Philadelphia, who agreed to abide by the minimum prices stipulated for the retail resale of its products by plaintiff; that the minimum price thus stipulated for the retail resale of plaintiff's bouquets was 50¢ for one ounce or any quantity less than one ounce; that, with knowledge of such contracts and of said minimum price, defendant continued to sell plaintiff's bouquets, under plaintiff's name, brands and trademarks, for 10¢, in 2-4/10 and 3-5/10 centimeter containers, procured in rebottled form from a dealer having no connection with plaintiff.

Defendant's answer admits all the acts averred in the bill but denies that such acts constitute a violation of the Pennsylvania Fair Trade Act, supra. . . .

The question presented is a legal rather than a factual one: Is a fair trade contract, setting a minimum price for one ounce, or for any quantity less than one ounce, of perfume products, within the purview of the Pennsylvania Fair Trade Act of June 5, 1935, P. L. 266.

Section 1 of the act provides, inter alia: "That no contract relating to the sale or resale of a commodity which bears, or the label or content of which bears, the trademark, brand or the name of the producer or owner of such commodity, and which is in fair and open competition with commodities of the same general class produced by others, shall be deemed in violation of any law of the State of Pennsylvania by reason of any of the following provisions which may be contained in such contract: (a) That the buyer will not resell such commodity, except at the price stipulated by the vendor." Section 2 provides:

"Wilfully and knowingly advertising, offering for sale, or selling any commodity at less than the price stipulated in any contract entered into pursuant to the provisions of section one of this act, whether the person so advertising, offering for sale, or selling is, or is not, a party to such contract, is unfair competition and is actionable at the suit of any person damaged thereby."

It is to be noted that the act by its terms imposes no limitation upon manufacturers in stipulating the minimum prices at which their products should be resold. There is no requirement that the prices bear any relation to the fair market prices for the products. For this court to scrutinize the price set by plaintiff for the retail resale of its bouquets would be to exceed its proper function. If the legislature had desired to place conditions upon the prices established by producers for the resale of their commodities, it could easily have done so. The Wisconsin Fair Trade Act, Laws of 1935, effective May 2, 1935, ch. 52, as amended by ch. 477, Laws of 1935, effective September 19, 1935, sec. 7, provides a method whereby a contract that is unfair and unreasonable as to the minimum prices stipulated may be declared to be in restraint of trade. No such provision is found in our statute.

Defendant contends that the act was intended to correct the abuses of price cutting and the use of "loss leaders", and that it may not, therefore, be used to aid a producer in enforcing a particular method of merchandising its products. However, in Old Dearborn Distributing Co. v. Seagram-Distillers Corp., 299 U. S. 183, the Supreme Court, in deciding that a similar Illinois statute was constitutional, said, at page 193: "In the second place, §2 does not deal with the restriction upon the sale of the commodity *qua* commodity, but with that restriction because the commodity is identified by the trademark, brand or name of the producer or owner. The essence of the statutory violation then consists not in the bare disposition of the commodity, but in a forbidden use

of the trade-mark, brand or name in accomplishing such disposition. *The primary aim of the law is to protect the property—namely, the good will—of the producer, which he still owns.* The price restriction is adopted as an appropriate means to that perfectly legitimate end, and not as an end in itself." (Italics supplied.)

If plaintiff believes that its good will is endangered by sales of its product in any quantity at less than 50¢, and, therefore, enters into a contract providing such a minimum price, other non-contracting dealers, such as defendant, are bound by that contract, and plaintiff may proceed against them for violations thereof. Plaintiff may clearly adopt any price restriction "as an appropriate means to" the "perfectly legitimate end" of protecting its good will.

Defendant relies strongly on Prestonettes, Inc., v. Coty, 264 U. S. 359, where it was held that the resale of products in rebottled and repacked form, bearing the trade-mark of the producer, and containing labels substantially similar to those attached to plaintiff's products in the form sold by defendant, did not violate the federal trade-mark laws and could not be restrained. This case, however, was decided in 1924, before the passage of the fair trade acts. The Court expressly stated that it was "not a suit for unfair competition." The present acts in Pennsylvania and forty-one other states have extended the law of unfair competition, and have restricted the freedom of merchants far beyond previous legislation. But even under the present law, defendant is not, and may not be, prevented from selling plaintiff's products in rebottled form, appropriately labeled. The only requirement imposed by the act is that, if such products are sold under plaintiff's brand or trade-mark, the price must not be less than that stipulated by plaintiff in pursuance of its contracts with other dealers. Furthermore, there is no absolute price restriction on the resale of plaintiff's products as such, but only on its resale under plaintiff's brand or trade-mark. "There is nothing in the

act to preclude the purchaser from removing the mark or brand from the commodity—thus separating the physical property, which he owns, from the good will, which is the property of another—and then selling the commodity at his own price, provided he can do so without utilizing the good will of the latter as an aid to that end": Old Dearborn Distributing Co. v. Seagram-Distillers Corp., supra, at 195.

A similar situation was presented in two cases, one in California and the other in New York, and in both of them preliminary injunctions were granted: F. S. De Voin, Exclusive California Distributor for Guerlain Products v. W. T. Grant Co. et al., Superior Court of California, Los Angeles County, February 11, 1938, 106 CCH Trade Reg. Serv. §25,106; Guerlain, Inc., v. F. W. Woolworth Co. et al., New York Supreme Court, New York County, February 3, 1939, 106 CCH Trade Reg. Serv. §25,216. In the California case, it was said: "The relation of the retail resale price to the actual value is of no consideration." As to the argument that the act may not be used for purposes other than to prevent price cutting as such, it was stated: "The statute has nothing to do with the purity of the product sold, with the accuracy of its measurement, or with the effect of its sale in small quantities, yet it is not for the court to say that these elements, which unquestionably enter into creating the good will, cannot be controlled, at least to some extent, by the price established for quantities less than a dram. If it is plaintiff's desire to avail himself of the purpose of the statute and in this manner to attempt the protection of the good will attaching to the trade-mark, brand, and name of the product which he distributes in California, the court cannot interfere . . .".

Defendant points out that other dealers are selling plaintiff's products in rebottled form at less than the price stipulated. This, of course, constitutes no justification for defendant's violations of the act. It has been consistently held, under similar statutes in other states,

that a producer need not simultaneously prosecute all violators of minimum resale price agreements: National Distillers Products Corp. v. Martell's Wine & Liquor Co., Inc., New York Supreme Court, 106 CCH Trade Reg. Serv. §25,162; Calvert Distillers Corp. v. Stockman, Federal District Court, E. D. N. Y., 106 CCH Trade Reg. Serv. §25,202; National Distillers Products Corp. v. Columbus Circle Liquor Stores, Inc., 166 Misc. 719, 2 N. Y. S. (2d) 319; At most, plaintiff must use reasonable diligence to enforce its minimum price schedule against other violators, without unfair, arbitrary or discriminatory practices in this regard: Calvert Distillers Corp. v. Nussbaum Liquor Store, Inc., 166 Misc. 342, 2 N. Y. S. (2d) 320, 325; Schenley Distributors, Inc., v. Stockman, New York Supreme Court, 106 CCH Trade Reg. Serv. §25,110; Calvert Distilling Co. v. Gold's Drug Stores et al., 123 N. J. Eq. 458, 461. No such lack of reasonable diligence and no such discrimination have been shown.

It need hardly be stated that it is immaterial that the total price received by defendant in its sales of plaintiff's bouquents in small containers exceeds 50¢ per ounce. The "price stipulated by the vendor", plaintiff, was not 50¢ per ounce, but 50¢ for one ounce or any quantity less than one ounce. This price has concededly not been adhered to by defendant.

Finally, defendant contends that plaintiff has not shown that it has been damaged by defendant's violation, and is, therefore, not entitled to an injunction. It has been held, under a fair trade act similar to ours, that "it is unnecessary, generally speaking, for the owner or producer to prove the actual damage sustained. It is sufficient to establish that there is in existence a 'good will' to be protected and injury thereto will ordinarily be presumed if there is unlawful price cutting": Calvert Distillers Corp. v. Nussbaum Liquor Store, Inc., supra, at 347. In the instant case, however, plaintiff has proved

that it has suffered or will suffer substantial damage if defendant's violations continue, in that most of plaintiff's retail outlets in Philadelphia have complained of defendant's actions, and some have threatened to discontinue purchasing plaintiff's products, or to start selling competing products, unless defendant's sales in violation of plaintiff's minimum price schedule are stopped. This certainly constitutes damage within the meaning of the act. Furthermore, plaintiff contends that the exclusive nature of its merchandise, and its quality as a "style" product are threatened by such sales, and plaintiff has amply established that these factors are essential to the successful marketing of its products, under its present method of doing business.

Plaintiff is, therefore, entitled to relief against defendant's violation of section 2 of the Pennsylvania Fair Trade Act. The only adequate remedy available to plaintiff is an injunction restraining further violations by defendant. . . .

### Decree Nisi

And now, June 19, 1939, upon consideration of the foregoing case, it is ordered, adjudged and decreed that defendant, F. W. Woolworth Company, be, and it is hereby, enjoined and restrained from advertising, offering for sale, or selling, products of plaintiff, Lentheric, Incorporated, bearing its brand, trade names, or trademarks, for prices less than those specified in plaintiff's published minimum retail resale price schedule for the State of Pennsylvania, and, particularly, from advertising, offering for sale, or selling "Bouquet Lentheric au Parfum Tweed", "Bouquet Lentheric au parfum Miracle", and "Bouquet Lentheric au perfum Shanghai", in rebottled form, under plaintiff's brand, trade names, or trade-marks, for less than 50¢ for one ounce or for any quantity less than one ounce.

Defendant to pay the costs.