## SUNBEAM CORPORATION v. BAUM-GARTEN et al.

### Civ. A. No. 10963.

United States District Court
E. D. New York.

Oct. 24, 1950.

Rogers, Hoge & Hills, New York City, for plaintiff, Cyrus Austin, George M. Chapman, New York City, of counsel.

Ernest Fleischman, New York City, for defendants.

GALSTON, District Judge.

The plaintiff seeks a preliminary injunction to restrain the defendants from offering for sale or selling at retail any commodity bearing plaintiff's trade-mark or trade-marks at less than the price stipulated therefor in plaintiff's New York fair trade contracts and price supplements currently in effect.

From the complaint it appears that the plaintiff, an Illinois corporation admitted to do business in the State of New York since 1921, is engaged in the business of manufacturing electrical household appliances including electric irons, toasters, mixers, coffee makers, shavers and waffle irons. It adopted the notation "Sunbeam" as a trade-mark for its electrical appliances and supplies. On or about May 1, 1929 it brought on the market its electric coffee maker, giving it the name "Sunbeam" and later "Coffee Master" as trade-marks; and at about the same time introduced an electric food mixer, to which the trade-marks "Sunbeam" and "Mix Master" were applied. Other trade-marks were adopted and used, such as "Iron Master" for electric irons, and "Shave Master" and "Sunbeam" for electric shavers. These trade-marks were registered in the United States Patent Office at various times prior to the institution of this action. It appears that these electrical appliances bearing the trade-marks have been widely and extensively advertised and sold in the State of New York and else-

where throughout the United States, and it is alleged that the plaintiff has expended more than $6,000,000 in advertising these appliances, and is currently spending more than $1,600,000 annually for such advertising. In addition to such direct advertising by the plaintiff, it is alleged that retail dealers throughout the United States regularly advertise "Sunbeam" appliances in their local newspapers, and by displays and other advertising media.

The plaintiff alleges that its electric appliances are in fair and open competition with commodities of the same general class produced by others.

Beginning in 1937, and subsequent to the enactment of the New York Fair Trade Act, General Business Laws, McK. Consol. Laws, c. 20, § 369-a et seq., plaintiff entered into contracts with retail distributors of electrical appliances, which incorporated agreements on the part of the retailers that they would not advertise, offer for sale or sell any of plaintiff's products at prices less than the price set forth in a schedule of minimum prices attached to the contracts and made part thereof, or in supplemental price schedules issued from time to time thereafter, pursuant to the New York Fair Trade law.

The individual defendant, Arthur E. Baumgarten, it is alleged, was prior to May 1, 1950, in partnership with one Jerome B. Booth, and maintained and operated a store and place of business located at 1569 Flatbush Avenue, Brooklyn, under the trade name and style "Dalmo Sales Co." In addition to a consumer buying service, that partnership sold electrical household appliances, including "Sunbeam", over the counter to consumers. The co-defendant, Dalmo Sales Co., Inc., is a corporation organized under and by virtue of the laws of the State of New York with principal office and place of business located at the same 1569 Flatbush Avenue, Brooklyn. It is alleged that this defendant was incorporated on or about May 1, 1950, and thereafter acquired the aforesaid business conducted by Baumgarten and Booth as copartners under the trade name "Dalmo Sales Co."

Baumgarten is the president and a director of the corporate defendant, and owns a majority of the capital stock, and is in charge of the management and conduct of its business. Its secretary and treasurer is Lenore Baumgarten, the wife of the defendant Baumgarten.

The complaint alleges further that Baumgarten, individually and as president of the Dalmo Sales Co., Inc., has from on or before September 1, 1949 had notice of the plaintiff's fair trade structure in the State of New York; that from time to time since September, 1949, the defendants received copies of plaintiff's price lists from plaintiff and its distributors, each of which conspicuously set forth what constituted an integral part of plaintiff's New York Fair Trade Act contracts and was intended as notice to retailers that "Sunbeam" products must be sold at not less than the resale prices stated.

On March 29, 1950 plaintiff sent by registered mail a letter addressed to "Dalmo Sales Co., 1569 Flatbush Ave., Brooklyn, New York", which letter was received and receipted for by Baumgarten. In this letter plaintiff states that it had information that Dalmo Sales Co. was retailing "Sunbeam" appliances at less than plaintiff's fair trade prices, and demanded that such price cutting be discontinued. Enclosed in the letter was a copy of plaintiff's form of fair trade contract, together with plaintiff's current price list.

Continuing, the complaint alleges that notwithstanding Baumgarten's knowledge, both individually and as president of the Dalmo Sales Co., Inc., the defendants have wilfully and knowingly offered for sale and sold plaintiff's products bearing its trademarks at prices below minimum resale prices.

It is charged that as an effect of such price cutting and unfair competition, plaintiff has suffered injury to its business and will suffer further serious losses and irreparable injury unless the defendants are restrained.

Convincing affidavits are filed in support of the motion for a preliminary injunction.

The affidavit of Edward K. Ploner, an official of the plaintiff, supports the allegations of the complaint that bear on its business in general, its registered trade-marks and its advertising expenditures. The affidavit likewise establishes that there are other companies whose products are in fair and open competition with the plaintiff's commodities. The fair trade policy of the plaintiff is set forth in considerable detail.

The affidavit of John J. Barry, salesmanager of the New York metropolitan area, describes the very considerable demand in and around New York for "Sunbeam" appliances. Mr. Barry says that there are nearly 4,000 retail dealers who regularly stock and sell "Sunbeam" products in and around New York, and that many of such dealers publish newspaper advertisements featuring "Sunbeam" appliances.

In the effort to show violations of plaintiff's rights by the defendants, representatives acting on its behalf at various times visited defendant's place of business and purchased "Sunbeam" appliances. Alice Bradley, accompanied by Frances Toolan, on April 24, 1950 entered the shop and asked for an electric shaver. The clerk directed them to a display of electric razors and showed them a Remington, a Schick and a "Sunbeam" razor. He said the prices ranged from $19.50 to $24.50, and added: "less discount, of course". Miss Bradley said she would take the "Sunbeam", and the clerk said the price was $18.75. The clerk made out a sales slip and she received the "Shave Master", tendering a $20 bill and receiving 87¢[1] in change. She also received from the clerk a Dalmo Sales Co. discount service card which among other matter contains this legend:

"Save 20–50%

on all nationally advertised merchandise."

They re-visited the placed on April 27, 1950. Miss Bradley asked the price of the "Sunbeam" toaster, and was told: "$16.55 and a trade-in on your old toaster". Miss Bradley stated that she did not want to trade in her old toaster; but the clerk replied: "I will pick up the old toaster, but I am not saying when—it may be 1989." Further colloquy ensued, and the clerk added: "I cannot give you this for $16.55 unless I have a trade-in. That is the law— I have to have your old toaster, but I might sell it back to you for a penny." So she was given a "Sunbeam" toaster and paid $16.88, receiving a sales slip indicating a $5.95 trade-in "to be picked up". No further request was made, she says, for a trade-in, and she did not turn in her old toaster or any other article. The affidavit of Frances Toolan corroborates what is set forth in the Bradley affidavit.

In Miss Bradley's supplemental affidavit, there was reference to the sales slip of April 24, 1950, and to a printed circular of two sheets offering the 20 to 50% discount on purchases of "all nationally advertised merchandise", and by reference to the latter it is clear that the registered or circular price of the "Sunbeam" shaver was $24.50, as against the price of $18.75 of the defendant, Dalmo Sales Co. The plaintiff's registered or circular price at which dealers were to sell plaintiff's toaster, the "Toast Master", as indicated on this price list, was $21.50, as against the offering price of the defendants, the Dalmo Sales Co., of $16.55.

Now as to these transactions, the defendant, Arthur E. Baumgarten, endeavors to set up a contradiction. He said he was the salesman who waited on Miss Bradley and Miss Toolan on April 24th and April 27th, 1950, and he insists that he told Miss Bradley that he would give her an allowance on an old razor; and as to the transaction on April 27th, he said he told her that he would make an allowance on an old toaster.

It seems extraordinary first that in an establishment such as he operates he would remember the two transactions in question; and even more beyond belief is the recital of trade-in allowances on the old razor and the old toaster. He offers no explanation as to how he determined the trade-in value.

---

1. Perhaps the difference between the 87¢ and $1.25 was a sales tax.

of either article—in other words, "sight unseen" the allowances were made. Nor is there any corroborating affidavit by Murray Ulonoff that he called up Miss Booth's residence to pick up the trade-in articles and found no one at home.

Other incidents of violations of the Act amounting to unfair competition are described in the affidavits of Miss Bowser, Miss Fuldner and Robert E. Enfield.

From the foregoing it must be concluded that both defendants are guilty of unfair competition by price cutting as defined in Sec. 369-b of Chapter 20, General Business Law, of McKinney's Consolidated Laws of the State of New York. The section reads as follows: "Wilfully and knowingly advertising, offering for sale or selling any commodity at less than the price stipulated in any contract entered into pursuant to the provision of section three hundred sixty-nine-a, whether the person so advertising, offering for sale or selling is or is not a party to such contract, is unfair competition and is actionable at the suit of any person damaged thereby." The validity of the Act is, of course, not challenged. It has often been construed, and its validity sustained; see Calvert Distillers Corp. v. Nussbaum Liquor Store, Inc., 166 Misc. 342, 2 N.Y.S.2d 320; Old Dearborn Distributing Co. v. Seagram Distillers Corp., 299 U.S. 183, 57 S.Ct. 139, 81 L.Ed. 109. The Act was carefully considered by Judge Moscowitz in Calvert Distillers Co. v. Stockman, D.C., 26 F.Supp.73, and relief given to the plaintiff. The law of these cases is not challenged here; and the facts are too pat, as disclosed in the motion papers, to justify in any way the acts of the defendants. Apparently they are in the business of offering discount service "on all nationally advertised merchandise," and clearly did so in selling plaintiff's products in the sales recited in the moving affidavits.

Accordingly the plaintiff may have a temporary injunction. Settle order on notice.

Findings of fact and conclusions of law in conformity with the foregoing opinion will presently be filed.