THE LIONEL CORPORATION, a corporation of the State of New York, Plaintiff,

*vs.*

PHIL KLEIN, trading as Phil's Distributors, Defendant.

*New Castle, June 9, 1955.*

*Thomas Cooch,* of Connolly, Cooch & Bove, Wilmington, for plaintiff.

*David Snellenburg, II,* of Killoran & VanBrunt, Wilmington, for defendant.

SEITZ, Chancellor: This is the decision after final hearing on plaintiff-corporation's complaint charging defendant with the violation of the Delaware Fair Trade Act [1] in the sale of plaintiff's products. At the close of the trial, the Court ruled from the bench that the defendant was clearly guilty of violating the Act and that the only question for decision was whether the defendant had sustained one or more of his other defenses to the action. The three defenses relied on by defendant are:

1. That there was such a deterioration of the Lionel resale price maintenance structure in the Wilmington area that the defendant cannot be equitably enjoined from selling plaintiff's products below the minimum resale price stipulated by plaintiff.

2. Plaintiff forfeited its right to enjoin the defendant from selling below the Fair Trade price by arbitrarily proceeding against the defendant and failing to take action against other known violators in the Wilmington area.

3. That plaintiff improperly discriminated in price between different purchasers in the Wilmington area and therefore forfeited its right to enforce its Fair Trade contract against defendant, an object of such discrimination.

Plaintiff-corporation manufactures and sells toy electric trains and parts. Defendant is a Wilmington merchant. In December 1953, on the basis of plaintiff's suit, the defendant was preliminarily enjoined from selling below the Fair Trade prices. Later, defendant

---

1. 6 *Del.C.,* Chapter 19.

moved to have the preliminary injunction vacated on the basis of the charge, now reasserted, of a general deterioration in Wilmington of plaintiff's resale price maintenance structure. Defendant's motion was denied by the then Vice Chancellor primarily because of the stage of proceedings at which it was raised. See *Lionel Corp. v. Klein, Del.Ch.,* 106 *A.2d* 525.

While the Fair Trade Act does not make provision therefor, the Courts have engrafted equitable defenses on the right of manufacturers to enforce the Fair Trade Act. See *Calvert Distillers Corp. v. Nussbaum Liquor Store,* 166 *Misc.* 342, 2 *N.Y.S.2d* 320. Thus, the Courts have recognized that where there is a general breakdown in a particular manufacturer's retail price structure in a particular area, the Court will not permit the manufacturer to pick out one retailer and attempt to enforce it against him. This, of course, is only fair where a party seeks to invoke equitable processes. The first question then is whether there has been such a "deterioration" in plaintiff's resale price maintenance structure in the Wilmington area as to preclude plaintiff's right to a permanent injunction. I assume that the burden of demonstrating this fact is upon the defendant.

Plaintiff insists that it has a firm price structure in Delaware. Defendant claims that this is not so because he alleges that seven different stores in the Wilmington area violated the Fair Trade Act with respect to the sale of plaintiff's products during the period in question.

Plaintiff concedes a violation by Sears Roebuck by a sale on December 23, 1953. There was also a sign offering a discount. Plaintiff admits a violation by a sale by Jarome's on December 24, 1953. Finally plaintiff concedes a violation by Claymont Hardware by a sale on November 9, 1954 (the second day of this trial). While there is some dispute, I believe that defendant proved a sale in violation of the Act by Knowles on January 18, 1954.

I conclude that defendant failed to sustain his burden of proving a violation by Rosenbaum's. The evidence is too equivocal. Defendant also relies upon discount sale ads by Wanamaker and Jack and Jill as the basis for the last two violations charged. Wanamaker's

did advertise a clearance sale at a discount on November 22, 1953. Jack and Jill's advertised a discount sale on March 6, 1954. Plaintiff denies that either company was advertising for sale a then fair traded item. It explains the discount on·the ground that these companies were not offering current models but rather were selling discontinued models which were not then covered by the Fair Trade Act. I conclude that defendant failed to sustain his burden of proving these violations because it does not clearly appear that these companies were offering items then subject to fair trade provisions.

I summarize: Defendant has shown four violations by Wilmington merchants in their dealings in plaintiff's product. I do not pause to analyze these violations at great length. One of them was sold on Christmas Eve and a discount requested of the final set in stock. The other violations took place on December 23, 1953 by Sears; on January 18, 1954, by Knowles and on November 9, 1954 (during the trial) by Claymont Hardware.

I cannot conclude that the four isolated violations justify this Court in concluding that there has been such a deterioration in the resale price maintenance program applicable to plaintiff's product in the Wilmington area as to warrant the denial of relief. Compare *Lionel Corp. v. Klein,* above. The four violations are relatively few when compared with the dollar value of such sales in this area.

I believe it is to be expected that there will be violations and it is necessary to evaluate these violations and their impact not only as isolated factors but also in conjunction with plaintiff's efforts to enforce its Fair Trade business in the Wilmington area. I therefore turn to defendant's second defense that plaintiff has arbitrarily proceeded against defendant and failed to take action against other known violators. Let us see what plaintiff has done. I proceed with this analysis without considering just what impact the burden of proof has thereon.

Plaintiff has been manufacturing electric toy trains for fifty-five years and spends over a million dollars a year in advertising. It therefore has a valuable good will to protect. Each year plaintiff circularizes its mailing lists with letters and other material calling

attention to its fair trade policy. I am fully persuaded that plaintiff attempts in good faith to make clear to all of the trade that its products are to be fair traded.

Plaintiff's policing policy varies, but generally it takes the form of spot checking by its salesmen, the checking of newspaper advertisements and the receipt of letters from informers about the activities of competitors. Except during periods when it was not legally possible to do so, plaintiff has policed its fair trade contracts primarily by means of registered mail and telegraphic notices to known violators. When deemed necessary legal actions have been filed. Here in Wilmington plaintiff has shopped the defendant and Jarome's. It should also be noted that the plaintiff obtained a permanent injunction against this defendant in an action filed prior to the decision of the United States Supreme Court holding that the then Federal law did not permit states to enact laws binding non-signers. The evidence showed many cases where plaintiff called the attention of sellers to alleged violations with a resultant discontinuance of such violations.

Plaintiff adopted a sensible plan of first giving the alleged violators an opportunity either to explain or to comply. It is only in the face of strong resistance that plaintiff resorts to Court action. The day after Knowles advertised plaintiff's products at a discount it received a telegram threatening action if the practice was continued. Plaintiff received a telegram that same day indicating that there would be no further violation. It may be noted that the Knowles violation relied upon by defendant occurred prior to the date of plaintiff's telegram.

When plaintiff received defendant's affidavit showing a violation by Sears Roebuck, a registered letter was sent by plaintiff calling attention to the Fair Trade agreement and asking for an explanation. It received a letter indicating that Sears would comply fully with plaintiff's Fair Trade contract. Plaintiff did the same thing in connection with Jarome's. The Rosenbaum charge is somewhat clouded by their explanation that the sale was made "in error". As indicated, I do not believe defendant proved its case, but in any event plaintiff

immediately wrote to Rosenbaum's and procured a satisfactory explanation. The Claymont Hardware violation took place during the midst of the trial and so no significance can be drawn from plaintiff's failure to act at that time.

Certainly there was no showing that alleged violators continued to violate the Act after receiving notices from plaintiff. On the other hand, defendant concedes that he exists by giving discounts. I have not the slightest doubt that unless prevented by law, he intends to violate the fair trade prices in selling plaintiffs' product.

I conclude that defendant has not supported his charge that plaintiff has arbitrarily proceeded against him and failed to take appropriate action against other violators in the Wilmington area.

We come to the defendant's third defense, viz., the claim that plaintiff improperly discriminated in price between different purchasers to the detriment of defendant. Plaintiff claims that its discount schedule is reasonable and proper and that, in any event, price discrimination is not a proper defense in a Fair Trade action.

Plaintiff has two basic price schedules—one applicable to jobbers and chain stores, and the other to fully qualified department stores. There is a third category which does not apply to new accounts and which is continued with one local merchant on the basis of a long established custom. This accounts for less than one per cent of plaintiff's sales in this area.

Plaintiff sells to jobbers at a discount of 40% and 20% which comes to a total discount of 52%. This price is f. o. b. the plaintiff's plant in Irvington, New Jersey. A 2% discount is allowed for cash in ten days and the net price is payable within thirty days.

Plaintiff also makes direct sales to chain stores such as Sears Roebuck for their various stores on the same terms as jobbers. This is done, plaintiff says, because chain stores, from plaintiff's point of view, are equivalent of jobbers. Defendant argues that the discount granted chain stores has no relation in fact to any savings to plaintiff since all Lionel deliveries are f. o. b. point of origin. The difficulty

with defendant's argument is that it ignores the fact that chain stores receive their shipments at warehouse points and undertake themselves to make distribution to their local outlets. Plaintiff's testimony was to the effect that the cost of this service by the chain stores is "not dissimilar" to that of the normal jobber. Thus, contrary to defendant's contention, there is reasonable explanation for the treatment of chain stores as jobbers insofar as discount rates are concerned.

The second basic price schedule which plaintiff has is at 45% for fully qualified department stores. The other terms are the same as are granted to the chain stores and jobbers. Plaintiff's president explained this rate on the basis that department stores give plaintiff a type of service which they are unable to receive elsewhere. This service arises from the fact that department stores, without expense to plaintiff, use their window space and space within the store to exhibit plaintiff's products. As one of plaintiff's witnesses characterized it, these department stores are plaintiff's show windows. Thus it appears that whether defendant approves or not there is a reasonable explanation for plaintiff's discount rate to department stores.

The third so-called category was the special discount of 40% and 5% (calculates out to 43%) which has been granted for years to old direct retail accounts. It is not being granted to new accounts and is continued as to Rosenbaum's only because it is an "old line" customer. In view of the limited volume and the historical and sentimental basis for the rate, I do not believe that it can be said to be of such a character as to constitute an unreasonable price discrimination as against defendant.

Defendant purchases plaintiff's products from distributors at 40% discount with payment in 90 days or more. Defendant receives a 2% discount for cash in 30 days and the prices are the delivered prices.

It thus appears that while there are some discount advantages granted the department stores and chain stores which are not available to defendant, these discounts appear to have a reasonable basis. See *Calvert Distillers Corp. v. Nussbaum Liquor Store*, above.

In any event, defendant failed to demonstrate that they were without reason or unrelated to advantages accruing to plaintiff.[2]

In disposing of this defense on its merits, I have assumed without deciding that the defense, if proved, would be a proper one. It follows that defendant's defenses in this action are without merit and plaintiff is entitled to a permanent injunction.

Order on notice.

2. After this opinion was filed defendant moved to reargue this point, but the motion was denied and the entire action dismissed on the ground that the case had become moot.