Jacob Markowitz, J.
This is an action brought pursuant to the provisions of the Feld-Crawford Act (General Business Law, § 369-a et seq.) to enjoin defendants from advertising, offering for sale or selling at retail any of the products manufactured by plaintiff at prices which are lower than the minimum prices fixed for its products in fair-trade agreements entered into between plaintiff and its dealers.
A temporary injunction herein was granted by an order of this court dated October 10, 1956, and is still in effect.
Plaintiff concededly relies herein upon the provisions of section 369-b of the General Business Jaiw, which reads as follows:
“ § 369-b. Unfair competition defined and made actionable. Wilfully and knowingly advertising, offering for sale or selling any commodity at less than the price stipulated in any contract entered into pursuant to the provision of section three hundred sixty-nine-a, whether the person so advertising, offering for sale or selling is or is not a party to such contract, is unfair competition and is actionable at the suit of any person damaged thereby.”
Plaintiff’s evidence which is uncontroverted, since deféndants rested upon plaintiff’s case and introduced no evidence on their own behalf, established the following.- That plaintiff is a large scale manufacturer of electronic equipment including the magnetic tape recorders and reproducers referred to in *1074 the complaint as Series 600 and 601. All of its products bear its own registered trade mark and brand and are advertised and sold in fair and open competition with commodities of the same general class produced by several other manufacturers. Plaintiff expends substantial sums to advertise and promote its products and to build up its good will in relation thereto. The method of doing business followed by it is to sell its merchandise only to franchised dealers who enter into a terminable sales agreement on a nonexclusive basis. Whenever such a dealer is located in a fair-trade State such as New York, he is also required to sign a fair-trade agreement which requires him to sell at retail at no less than the minirmim prices fixed in a price list which is given to him along with the agreement. The plaintiff has followed this practice since 1953 and at this time has approximately 500 of such dealers selling its equipment under such conditions. In support of this testimony, copies of several fair-trade agreements involving New York State dealers were introduced into evidence by the plaintiff. The testimony also established that the defendants have never been authorized to sell plaintiff’s commodities. Plaintiff has never sold any merchandise to defendants nor given them a copy of its fair-trade agreements or price lists.
The price of the plaintiff’s 600 Series magnetic tape recorder was fixed by plaintiff’s fair-trade agreements at a minimum of $545. The price of the 601 Series magnetic tape recorder, which is an improved model of the 600 Series, is also listed by plaintiff at $545 for retail sales. Although manufacture of the 600 Series was discontinued on or about April 27, 1956, neither of the series models has ever been removed from coverage under the fair-trade agreements of plaintiff.
The evidence further discloses that defendant Sam Goody is in the retail business of selling phonograph records and related products, and defendant Goody Audio Center, Inc., sells phonographs, tape recorders, audio equipment" and related products also at retail. Both operate under a selling policy which calls for a large volume of sales at very small unit markups.
In this case, the proof shows that on at least two different occasions, during conferences between representatives of plaintiff and defendants, officials of the plaintiff called attention to the fact that all of their products were fair traded, including the Series 600 and 601 tape recorders which were later advertised for sale by defendants, as evidenced by plaintiff’s Exhibit 23. In July, 1956 defendants, through one of their representatives, contacted one of plaintiff’s officers, then in New York, *1075 with a view toward obtaining a franchise for plaintiff’s products. On August 1, 1956, during the course of a discussion between the defendants’ representatives and plaintiff’s officers, the defendants exhibited to representatives of plaintiff and also sent to plaintiff’s home office in California a proof of an advertisement, ostensibly to be placed in the New York Times, which advertised, by name, plaintiff’s 600 and 601 Series tape recorders for sale during the week from August 6-11, at a price of “ 30% and 25% off respectively ”. Asa result thereof, plaintiff caused a telegram to be sent to defendants on August 2, 1956, in substance advising them that plaintiff’s products are subject to fair-trade agreements and that the proposed advertising thereof at prices below the fair-trade list prices constituted unfair competition within the purview of section 369-b of the General Business Law and demanding that defendants refrain from such advertising or selling.
Despite the telegram, receipt of which was not denied, defendants, on August 12, 1956, inserted an advertisement in the New York Times offering plaintiff’s Series 600 tape recorder, by name, at a “ 30% reduction ”, specifying plaintiff’s price therefor specifically as $545 and defendants’ price as $381.50. The advertisement further suggested that defendants’ further ads be watched for the 601 Series.
The technical objection urged by defendants, to the effect that the aforesaid fair-trade agreements are ineffective for purposes of fixing minimum prices because the price lists covered thereby are not physically annexed thereto, has no validity. The proof shows clearly that the lists are given to each dealer as an integral part of and simultaneously with the signing of the fair-trade agreements in question. The circumstance that the price list may not be physically fastened to the agreement at the time does not affect the enforcibility of the agreement. The price lists are adequately referred to and connected with the agreements by reference and constitute minimum prices below which no dealer is permitted to sell at retail within the purview of section 369-b of the General Business Law.
Defendants rely primarily on legal grounds in resisting the action, the nub of which appears to be that the plaintiff can prevail only if it shows that direct and specific notice was given to defendants of the existence of the fair-traded prices before the claimed violation took place. The premise so urged is unsupported by the law prevailing in this jurisdiction. The act under which plaintiff proceeds requires no particular form of notice (Seagram-Distillers Corp. v. Seyopp Corp., 2 N. Y. S. 2d 550). It only necessitates the existence of knowledge which *1076 need not be acquired in formal fashion and plaintiff was under no obligation to send direct or specific notice as to prices to defendants. As stated in the Seagram case (p. 551) previously referred to, “ no notice at all is necessary except as a basis of proof that the defendant ‘ knowingly ’ made the sales complained of.” In my view, there can be no inference other than that defendants knew, not only that these particular products were fair traded, but also knew their minimum prices and used them to show prospective purchasers the extent of the discount available to them if such equipment was purchased from defendants. Under all of the circumstances, advertising with such knowledge constitutes unfair competition within the prohibition of the Feld-Crawford Act, whether or not actual sales were proved. It is, however, to be noted that plaintiff also introduced evidence, which defendants fail to contradict, to show that it sent a shopper to defendants’ place of business to purchase a Series 600 recorder about two days after publication of the advertisement and she was advised that they were sold out.
The claim made by defendants that the 600 Series recorder was no longer fair traded when they advertised it for sale is refuted by the uncontradicted proof of plaintiff whose witnesses affirmatively stated that said item was never removed from the fair-traded agreements coverage. The circular of plaintiff to its dealers dated April 27, 1956, while announcing in substance the discontinuance of the 600 Series and the manufacture of the 601 Series, nowhere implies that the former is no longer to be sold at the prescribed fair-trade prices. As a matter of fact, the only' reference therein to price seems to negate any such possibility since, referring to the 601 Series, the circular states “ The price is the same as the Model 600, i.e. $545.00.” This language, thus, rather seems to indicate an intent to maintain the 600 Series price at its fair-trade level.
Nor do I see any merit to defendants’ contention that the motive for this action is violative of the spirit of the FeldCrawford Act in that its main purpose is not intended to protect plaintiff’s good will, but to preserve to plaintiff and its dealers a lucrative market and to protect such dealers’ competitive position in that market. Aside from defendants’ complete failure to introduce evidence to support this argument, it is clear that the conduct complained of, as proved, constituted a positive violation of section 369-b and was actionable.
By the same token, the assertion that plaintiff’s right to equitable relief is lost by reason of its refusal to sell its products to defendants is also not valid. ‘ Certainly plaintiff is free to *1077 choose those persons to whom it sells its products. Nor does the Feld-Crawford Act condition, as a prerequisite to the relief sought, that a manufacturer must first give a retailer an opportunity to buy its products before it can proceed against him thereunder. The language of the statute involved indicates to the contrary, for it clearly contemplates the type of situations existing in the instant action, i.e., that of a violation by a non-signer of a fair-trade agreement (Calvert Distillers Corp. v. Nussbaum Liquor Store, 166 Misc. 342, 347). To sustain defendants’ argument in this connection would be to hold that only signers of fair-trade agreements may be held liable under the Feld-Crawford Act, an interpretation obviously contrary to the statute and the prevailing decisions.
The circumstance that defendants may not have advertised, sold or offered for sale any of plaintiff’s products below fair-traded prices subsequent to the acts complained of, cannot deprive plaintiff of its right to injunctive relief.
Plaintiff, having established that defendants have violated the pertinent statute, is entitled to injunctive relief not only with respect to the specific items involved, hut as to all other of the plaintiff’s products similarly price fixed so as to protect it from any future violations of the same kind (Weisstein v. Freeman’s Wines & Liquors, 169 Misc. 391).
Plaintiff is therefore entitled to an injunction as prayed for, but not to any damages, as plaintiff, at the trial, withdrew such claim.
Both sides having waived findings of fact and conclusions of law, the foregoing constitutes the decision of the court as required by section 440 of the Civil Practice Act. Settle judgment accordingly.