Van Voorhis, J.
 

 Plaintiff is the exclusive distributor of Carstairs whiskey and Wolfschmidt vodka. The threshold problem in affirming the Feld-Crawford Act (General Business Law, § 369-a
 
 et seq.)
 
 injunction prohibiting the retailing by defendant of these branded liquors at less than the prices fixed by the distiller (or its distributor) is that the injunction takes no account of the fundamental changes made in the pricing of liquor by the enactment of chapter 531 of the Laws of 1964. This act “ sought to end the discrimination by the liquor industry against the New York consumer which, as the [Moreland] commission had found, cost the New York consumer $150 million a year above that which a free market would have offered.”
 
 (Seagram & Sons
 
 v.
 
 Hostetter,
 
 16 N Y 2d 47, 55.) The Supreme Court took notice of the purpose of this act, in affirming its constitutionality, by stating (384 U. S. 35, 47-48): “ The announced purpose of the legislature was to eliminate ‘ discrimination against and disadvantage of consumers ’ in the State. Frustrated by years of unhappy experience with a state-enforced mandatory resale price maintenance system that placed exclusive price-fixing power in the hands of the distillers, the legislature adopted § 9 as the core of the liquor price reform contemplated by Chapter 531. We cannot say that the legislature acted unconstitutionally when it determined that only by imposing the relatively drastic ‘ no higher than the lowest price ’ requirement of § 9 could the grip of the liquor distillers on New York liquor prices be loosened.”
 

 In a footnote the Supreme Court quoted relevant portions of the recital in section 8 of chapter 531, which stated the purpose of the enactment to be: “In order to forestall possible monopolistic and anti-competitive practices designed to frustrate the elimination of * * * discrimination and disadvantage [to consumers], it is hereby further declared that the sale of liquor .should be subjected to certain further restrictions, prohibitions and regulations, and the necessity for the enactment
 
 *185
 
 of the provisions of section nine of this act is, therefore, declared as a matter of legislative determination.”
 

 If this objective can be frustrated by Feld-Crawford injunctions, such as the one now under review, then the whole legislative process of eliminating the “ exclusive price-fixing power in the hands of the distillers ”
 
 (Seagrams & Sons
 
 v.
 
 Hostetter,
 
 384 U. S.,
 
 supra,
 
 p. 48) has been full of sound and fury, signifying nothing. The effect upon the Feld-Crawford Act of the change in our 'State alcoholic beverage price-fixing policy depends upon our State court decisions. On some 16 different applications, our various Special Terms considered that the Feld-Crawford Act would be affected in connection with liquor sales by whether the constitutionality of chapter 531 of the Laws of 1964 were to be sustained, as has subsequently occurred
 
 (Seagram & Sons v. Hostetter,
 
 16 N Y 2d 47, 384 U. S. 35). The question was considered by us in
 
 National Distillers & Chem. Corp.
 
 v.
 
 Seyopp Corp.
 
 (17 N Y 2d 12), but was not squarely confronted due to the circumstance that chapter 531 of the Laws of 1964 was held not to be “ self-operative ”, “ since subdivision 4 of section 101-b says plainly that such schedules are to be filed ‘ on a date to be fixed by the authority ’. It is undisputed that the .State Liquor Authority has never fixed such a date. It is the undisputed fact also that after we decided
 
 Seagram & Sons
 
 v.
 
 Hostetter
 
 (16 N Y 2d 47,
 
 supra),
 
 a Justice of the United States Supreme Court granted a stay which is still in effect and which specifically restrains both the State Liquor Authority and the State Attorney-G-eneral from requiring compliance with section 101-b.” (17 N Y 2d,
 
 supra,
 
 p. 16).
 

 The stay to which this animadversion was made in our majority opinion in the
 
 Seyopp
 
 case was, of course, vacated when our judgment upholding the constitutionality of chapter 531 of the Laws of 1964 was affirmed by the Supreme Court, and the schedules required by section 101-b of the Alcoholic Beverage Control Law to put that statute fully into effect have been filed. The issue comes before us now in a different posture from that in which it was presented to us by the
 
 Seyopp
 
 case in January, 1966. It must now be decided whether, as a matter of State public policy and statutory construction, the Few York State 1964 liquor legislation had any effect upon the application of the FeldCrawford Act to retail liquor sales. We consider that it did.
 

 
 *186
 
 The inconsistency of an opposite position was noted in the opinion of the Supreme Court in the
 
 Seagram
 
 case. Although recognizing that it presented a State question, the Supreme
 
 Court may
 
 have concluded that the
 
 Seyopp
 
 case was decided without regard
 
 to
 
 the circumstance that no schedules had been filed under section 101-b and that, at the time when it was decided, this had been restrained by a stay issued by a Justice of that court. It was evidently argued to the Supreme Court in
 
 Seagram
 
 that the Feld-Crawford Act would frustrate the price provisions of the 1964 legislation, and that this bore upon whether the act was constitutional. Concerning that the Supreme Court made this comment (384 U. S.,
 
 supra,
 
 p. 50): ‘ The legislature might reasonably have concluded that consumer prices would adequately reflect the reductions in prices to wholesalers and retailers accomplished by § 9, even though the state fair trade statute, which permits private resale price maintenance agreements on sales to consumers, appears to have emerged unscathed by the enactment of Chapter 531. ‘ A statute is not invalid under the Constitution because it might have gone farther than it did, or because it may not succeed in bringing about the result that it tends to produce. ’
 
 Roschen
 
 v.
 
 Ward,
 
 279 U. S. 337, 339.”
 

 Reliance appears to have been placed upon the
 
 Seyopp
 
 case, which is cited by the Supreme Court in a footnote, for the conclusion that the Feld-Crawford Act might have emerged unscathed, at the hands of our court, 'by the enactment of chapter 531 of the Laws of 1964. This excerpt from the opinion by the Supreme Court indicates that the purpose of the pricing provisions of chapter 531 would be thwarted if retail prices could be kept up to the same levels by Feld-Crawford injunctions while the prices on sales to and by wholesalers were reduced, but that, even assuming such a construction to be placed by the New.York courts on its own State legislation, it would not render chapter 531 of the Laws of 1964 invalid under the Federal Constitution. Indeed, it appears to have been assumed that, if chapter 531 were not to affect liquor sales at retail under the Feld-Crawford Act, such a limitation would soon be removed, by saying (384 U. S.,
 
 supra,
 
 p. 51) that “ ‘ [T]he reform may take one step at a time ’ ”, quoting from
 
 Williamson
 
 v.
 
 Lee Opt. Co.
 
 (348 U. S. 483, 489),
 

 
 *187
 
 The
 
 Seyopp
 
 case, in reality, did not decide that this 1964 liqnor legislation (once it had gone into full force and effect by the filing of brand prices with the State Liquor Authority) would be ineffectual to aid the consumer by reason of Feld-Crawford injunctions. It was said in
 
 General Elec. Co.
 
 v.
 
 Macy & Co.
 
 (199 Misc. 87, 92) that, “In the absence of statutory standards, they [the courts] have imposed equitable safeguards designed to ensure the functioning of the statute for the purposes expressed by the Legislature.”
 

 Justice Shientag said in deciding
 
 Calvert Distillers Corp.
 
 v.
 
 Nussbaum Liq. Store
 
 (166 Misc. 342, 345): “If equitable restrictions and safeguards may not be applied by the courts, then, instead of being a ‘ Fair Trade Act ’ the statute would become an act to permit unfair trade and business practices.”
 

 No principle is better established than that a plaintiff should be denied an injunction where it lacks equitable standing to obtain affirmative equitable relief (e.g.,
 
 De Candido
 
 v.
 
 Young Stars,
 
 10 A D 2d 922). Manifestly the price provisions of chapter 531 of the Laws of 1964 were not enacted to enrich the wholesaler or retailer. If the 1964 legislation has any meaning in regard to retail prices, as we must assume that it does have, then the prices to be fixed by liquor injunctions against the retailer cannot be set at higher figures than those which would result in the normal course of business from the application of the price reduction provisions of that legislation. Plaintiff here has made no attempt to show what the effect of those provisions would be upon retailers such as defendant in the normal course of trade but, on the contrary, has sought to evade and escape from their effects in order, if possible, to nullify the legislation. The inequitable result of injunctive relief of that character would be to continue the frustration which the Supreme Court mentioned in the
 
 Seagram
 
 case at pages 47-48 as resulting from “ years of unhappy experience with a state-enforced mandatory resale price maintenance system that placed exclusive price-fixing power in the hands of the distillers ’ ’. It is the public policy of the State manifested by this 1964 legislation to eliminate the distillers’ monopolistic power, in this respect, and if he who seeks equity must do equity then injunctions cannot issue to frustrate the public policy of the State as solemnly formulated and declared
 
 *188
 
 by the Legislature. As we said in
 
 Seagram & Sons
 
 v.
 
 Hostetter
 
 (16 N Y 2d,
 
 supra,
 
 p. 55), “ section 9 of the 1964 statute set up means which sought to keep down the prices of brand liquors
 
 to the
 
 consumer(Italics supplied.)
 

 An argument has been made with considerable force in behalf of appellant that the Feld-Crawford Act was wholly repealed by the enactment in 1950 of section 101-c of the Alcoholic Beverage Control Law establishing mandatory price-fixing, insofar as retail sales of branded liquors were concerned, after the decision in
 
 Matter of Levine
 
 v.
 
 O’Connell
 
 (275 App. Div. 217, affd. without opn. 300 N. Y. 658), and that it was not revived by the repeal of section 101-c by chapter 531 of the Laws of 1964 (General Construction Law, § 90). Under either system, however, mandatory minimum retail sales prices were fixed by the distillers, and, although resort could not be had to FeldCrawford agreements while mandatory price-fixing remained in force, we think that there was not such complete repugnance between them as to result in a repeal by implication
 
 (Matter of Tiffany,
 
 179 N. Y. 455) so as to prevent Feld-Crawford from being utilized in connection with sales of liquor merely as a result of the enactment and repeal of mandatory price-fixing (Alcoholic Beverage Control Law, § 101-c). This seems to have been the thought of the Moreland Commission and of the Governor in his Message to the Regular Session of the 1964 Legislature
 
 (N.
 
 Y. Legis. Ann., 1964, pp. 484-489).
 
 No
 
 legislation was enacted on this subject at the Regular Session of that year. Upon the other hand, at the Extraordinary 1964 Session called by the Governor, an important new element was introduced into the situation. The Governor then recommended, for the first time, and the Legislature adopted (L. 1964, ch. 531) the provisions contained in the new section 101-b (subd. 3, pars, [d], [f]), which have been previously discussed in this opinion, requiring that the bottle and case price of branded liquors to wholesalers and by wholesalers to retailers shall be no higher than the lowest price at which such items of liquor are sold to any wholesaler or retailer in any other State of the United States or in the District of Columbia. The thrust of that statute has not been changed, insofar as it relates to the present controversy, by the amendment by chapter 798 of the Laws of 1967 which retains the same provision depressing prices to
 
 *189
 
 wholesalers but changes the corresponding provision on sales to retailers by requiring that prices from wholesaler to retailer shall reflect any decrease in brand owner prices to wholesalers.
 

 As has been previously stated, the object of the Legislature in enacting chapters 531 of the Laws of 1964 and 798 of the Laws of 1967 was to benefit consumers, which means that retail prices cannot be fixed under the Feld-Crawford Act by agreements between distillers and retailers in such manner as to prevent the reduction in retail sales prices which would follow in the normal course of business from the statutorily required reductions in prices to wholesalers and to retailers. FeldCrawford injunctive relief is not wholly forbidden by the 1964 legislation, but it is necessarily conditioned and qualified so as not to conflict with these underlying provisions. The Legislature contemplated that, by depressing the prices of branded liquors to wholesalers and by wholesalers to retailers, the retail price to the public would thereby be reduced so as not, in the language of the statute, to discriminate against the consumer. Prices to be fixed by liquor injunctions under the Feld-Crawford Act cannot be set at higher figures than those which would result in the normal course of business from the application of the price reduction provisions of that legislation. The burden of showing whatever is necessary to be established rests upon the plaintiff in an action for a Feld-Crawford injunction. That act is an exception to anti-trust and common-law principles
 
 (Doubleday, Doran & Co.
 
 v.
 
 Macy & Co.,
 
 269 N. Y. 272;
 
 Old Dearborn Co.
 
 v.
 
 Seagram Cory.,
 
 299 U. S. 183;
 
 Bourjois Sales Corp.
 
 v.
 
 Dorfman,
 
 273 N. Y. 167;
 
 Schwegmann Bros.
 
 v.
 
 Calvert Corp.,
 
 341 U. S. 384;
 
 Schwegmann Bros. Giant Super-Market
 
 v.
 
 Lilly & Co.,
 
 205 F. 2d 788, cert. den. 346 U. S. 856, rehearing den. 346 U. S. 905). Fair-trading agreements can be made under the Feld-Crawford Act fixing retail prices for the sale of liquor, but only on plaintiff’s establishing the extent to which, in the language of the Supreme Court (384 U. S.,
 
 suyra,
 
 p. 50), reductions in “ consumer prices would adequately reflect the reductions in prices to wholesalers and retailers accomplished by § 9 ”.
 

 Defendant asserts that the prices sought to be enforced by this injunction are the same as they were under the now repealed
 
 *190
 
 mandatory price-fixing by the State Liquor Authority. If so, the order appealed from should be reversed and the complaint dismissed. Upon the other hand, if the prices fixed by this FeldCrawford agreement sought to be enforced herein by injunction do, approximately, reflect the reduction in retail prices which would result in the normal course of business from the statutorily mandated reductions in the case of sales to wholesalers and to retailers, then an injunction may issue. In speaking of retail prices at levels which would reflect in the normal course of business the reduced prices to wholesaler and retailer, there should be allowed such markups by the retailer to cover his expenses and unit profits as are customary in the trade. In this manner the benefits to the consumer which prompted the enactment of the 1964 legislation will be achieved, and at the same time the confusion can be avoided of miscellaneously priced retail sales of the same branded liquors.
 

 The other contentions made by appellant and cross appellant are overruled.
 

 The order appealed from should be reversed, the injunction vacated, and the matter remitted to the Supreme Court for further proceedings in accordance with this opinion, with costs in all courts to the appellant to abide the event.
 

 Chief Judge Fuld and Judges Burke, Scileppi, Bergan and Keating concur with Judge Van Voorhis; Judge Breitel taking no part.
 

 Upon reargument: Order of Appellate Division reversed and matter remitted to the Supreme Court for further proceedings in accordance with the opinion herein, with costs to abide the event.