[Crim. No. 5563. Second Dist., Div. Three. Mar. 20, 1956.]

In re MURRAY MELLMAN, on Habeas Corpus.

Ward Sullivan for Petitioner.

Harold W. Kennedy, County Counsel (Los Angeles), and William E. Lamoreaux, Deputy County Counsel, for Respondent.

Landels & Weigel, Stanley A. Weigel and Harry A. Keithly for Real Party in Interest.

SHINN, P. J.—Habeas corpus. A writ was heretofore issued, return filed and hearing has been had at which it was stipulated that the petition should be considered as a traverse to the return.

Petitioner Murray Mellman was imprisoned by virtue of a judgment and commitment for contempt issued by the Superior Court of Los Angeles County. The proceeding in the superior court was initiated by affidavits from which it appeared that on November 1, 1950, in an action of *Sunbeam Corp.* v. *Mart,* also known as *Masters Mart, Inc.,* the defendant corporation, its officers, directors, agents and employees, were restrained by a judgment entered by consent from selling, offering for sale or advertising for sale any Sunbeam commodity at prices below those stipulated in plaintiff's fair trade contract entered into between plaintiff and its retailers pursuant to sections 16900 to 16905 of the Business and Professions Code, as set out in a price supplement which was made a part of the decree by reference.[1]

---

[1]"IT IS HEREBY ORDERED that the said defendant and its officers, directors, agents, servants, representatives, clerks and employees SHOULD BE, AND THEY ARE, AND EACH OF THEM IS, HEREBY RESTRAINED AND ENJOINED from attempting to do or causing to be done, either directly or indirectly, by any means or method or device, any of the following acts:

"1. Selling, offering for sale or advertising for sale any Sunbeam commodity at prices less than the prices now stipulated in plaintiff's Fair Trade Contract, said contract entered into between plaintiff and its retailers pursuant to Sections 16900 to 16905, inclusive, of the Business and Professions Code of the State of California, also known as the Fair Trade Act, plus the State Sales Tax, as set out in the current Fair Trade Contract Price Supplement No. 29, attached to the stipulation, which is made a part of this decree by reference as though set out fully herein, or any amendment of said fair trade prices as shall be made by plaintiff from time to time of which the defendant shall have notice.

"This decree shall not apply to any sale of plaintiff's commodities made in closing out the owner's stock for the purpose of discontinuing delivering any such commodity, or when the goods are damaged or deteriorated in quality, if notice is given to the public thereof, or by any officer acting under the orders of any court."

The corporation and Mellman, its president, were accused of having made 21 separate sales of Sunbeam products in violation of the injunction. Upon the hearing in response to an order to show cause why they should not be punished for contempt, a stipulation was entered into between plaintiff and the citees with the approval of the court. The following material facts were established for the purposes of the hearing, namely, that the sales described in the affidavit were made as alleged therein; that the persons making said sales and affidavits were acting as employees of Western States Bureau of Investigation which was to pay said persons for their services pursuant to Sunbeam's having engaged the bureau to have said purchases made and witnessed; that Mellman as president of the corporation had full knowledge of the provisions of the injunction; that all prior records and files in the action might be considered by the court and that the right to present oral testimony was waived. The court made findings that the corporation and Mellman separately wilfully, deliberately and contemptuously violated said injunction on 21 separate occasions between December 7, 1954, and May 2, 1955, by knowingly selling and permitting to be sold a fair-traded Sunbeam commodity, an appliance bearing Sunbeam's trademark, brand or name, at less than the fair trade price as required therefor by said injunction and that said sales were not within any exception provided in said injunction. The corporation was fined $200 for each of 21 contempts and Mellman was fined $100 for each thereof with a proviso that if said fine be not paid by Mellman he serve one day in the Los Angeles County jail for each $2.00 of said fine until the same should be fully paid or served and in addition thereto, Mellman was sentenced to serve five days in the county jail.

Petitioner's principal contention is that the purchases, although below the stipulated prices, were not violative of the injunction because the purchasers were acting on behalf of Sunbeam, being operatives of an investigating bureau employed and paid by Sunbeam for the purpose of ascertaining whether the injunction was being violated. It is argued that the purpose of the fair trade laws is to protect the property rights in a trade name or trademark by permitting the producer to control by contract the price of the article to the ultimate consumer, and that when the producer, himself, buys the article at less than the agreed retail price he is not harmed and has no right to complain.

Petitioner says "Where, however, the producer, either directly or indirectly purchases his own product from the retailer not for the purpose of resale and not as the ultimate consumer of such product such purchases do not come within the scope and purpose of the Fair Trade Act and cannot constitute a contempt of the injunction issued against petitioner."

Petitioner has cited no authority which lends support to his contention. Sunbeam calls attention to a number of cases in which courts have had an opportunity to consider the significance of purchases made by a producer in the course of his investigations of suspected violations of injunctions by retailers or as affecting the producer's right to an injunction. Among them are *Revere Copper & Brass, Inc.* v. *Stern* (N.Y. Sup.Ct., 1954), 1954 Trade Cases No. 67636, —— N.Y.S.2d ——; *General Elec. Co.* v. *Automobile Assn. of New Jersey* (1955), 37 N.J. Super. 477 [117 A.2d 673], 1955 Trade Cases No. 68199; *Lionel Corp.* v. *Klein* (1955), —— Del.Ch. —— [114 A.2d 652], 1955 Trade Cases No. 68085; *Seagram Distillers Corp.* v. *New Cut Rate Liquors, Inc.* (C.A. 7, 1955), 221 F.2d 815. In these and other cases the employment of "shoppers" by the producer has been regarded as somewhat of a routine procedure in the enforcement of fair trade contracts and sometimes as essential, when other evidence of violations is unavailable, for protection of the producer against the claim that he had lost his rights under his contracts by failing to assert them. (See *General Elec. Co.* v. *Home Utilities Co., Inc.* (D.C.Md., 1955), 131 F.Supp. 838, affd. (C.A. 4, 1955) 227 F.2d 384.)

It may be that a court might in some circumstances discharge a citee upon an accusation for contempt if the conduct of his adversary had intentionally led him into a technical violation of an injunction, but even in such a case the question would not go to the jurisdiction of the court. However, there is no such situation here. All Sunbeam did was furnish an opportunity for the corporation and its agents to sell Sunbeam's products at prices fixed by them and they were fixed without any connivance on the part of the purchasers. It was the conduct of the sellers that was under review and their acts were none the less wilful and intentional because, unknown to them, the purchasers of the articles were acting on behalf of Sunbeam.

The injunction made no exception of sales made to Sunbeam or its agents nor did it incorporate all or any part

of the contract by reference or otherwise. The 21 sales were made in violation of express and clear provisions of the injunction. They did not fall within the exception which related to closing out sales. If other exceptions had been deemed desirable the time to request or demand them was at the time of trial and before entry of judgment. To read into the injunction other exceptions would be modification, not interpretation. The judgment as it stands is final and conclusive. It does not permit sales to Sunbeam or its agents at less than the stipulated prices; it prohibits them.

It is immaterial whether Sunbeam's rights in its trademarks and trade brands were affected by the 21 sales in question. Sunbeam had rights under the contract, as they were declared in the injunction, the principal one being that the contract be not breached by the retailer. Every sale made at prices below those stipulated in the injunction was by force of the injunction a breach of the agreement and of Sunbeam's right to hold the retailer to its terms. When the injunction was issued the court became an interested party. It had a duty to see that the injunction was obeyed. The sole question was whether it had been violated by the citees. The fact that Sunbeam's agents made the purchases was not a valid defense to the accusation.

Petitioner again endeavors to go behind the injunction to the contract, contending for an interpretation that would permit him to make sales such as the ones in question. He says in his petition "The exceptions in the said Retail Sales Contract authorize 'sales of such commodities to persons who have agreed not to resell the same except at the retail price stipulated in accordance with said Agreement,' and the sales to the aforesaid affiants fall within such exception and said sales are therefore not violative of the order of Court and do not constitute a Contempt of said Court." And in a letter memorandum submitted to the court he says: "We earnestly and sincerely contend that Paragraph 3 of the Retail Sales Agreement between Sunbeam Corp. and Masters Mart (Exhibit B) was intended to exempt from the provisions thereof sales of the producers commodities to persons, firms or corporations who had agreed that they would not in turn resell the same except at the retail price stipulated in accordance with that agreement. . . . Such sales were, therefore, excepted from the provisions of petitioner's Fair Trade Agreement and could not constitute a contempt of the De-

cree of the Superior Court.'' The provision he relies upon is paragraph 3, to wit: ''3. Retailer will not resell said commodities or any of them to any person, firm or corporation, (excepting only bona fide consumers) who shall not have agreed that such purchasers will not in turn resell the same except at the retail price stipulated in accordance with this Agreement at the time of such resale, nor will the Retailer assist any third person, firm or corporation in obtaining any of said commodities for purposes of resale.'' It will be noted that in each instance there is an omission of the words ''excepting only bona fide consumers,'' but the phrase is not material to the questions that are presented. The entire paragraph is irrelevant.

The parties discuss at length the meaning of certain provisions of the contract. As we have said before, petitioner's duties were measured by the injunction. It would avail petitioner nothing to show that certain transactions that are forbidden by the injunction are permitted by the contract. All his discussion is irrelevant. No one questions the meaning of the injunction, which, of course, stands alone, independent of the contract. In the present view it supersedes the contract. We may add, however, that we find nothing whatever in paragraph 3 of the contract which even remotely tends to permit the retailer to make individual sales at cutrate prices. The paragraph not only fails to support petitioner's argument but may not even be considered. The sales were violations of the injunction. The trial court in the contempt proceeding was governed by the clear provisions of the injunction, even if it proscribed acts which were permitted by the contract.

The further contention that there was no showing by the accusatory affidavits that the articles sold were ''in fair and open competition with commodities of the same general class produced by others'' (see Bus. & Prof. Code, § 16902) is answered by the injunction itself. It lists the articles and stands as an adjudication that they were proper subjects of a fair trade contract. A later contract of the parties which was in force at the time of the sales was before the court as an exhibit to the affidavit of one Cervenko and it recited that the articles listed, including the subjects of the 21 sales, were in ''free, fair and open competition with commodities of the same general class produced by others.'' Petitioner signed the contract as president of the corporation and it constituted evidence of the facts recited therein.

Petitioner, on behalf of his corporation, entered into the contract with Sunbeam having full knowledge of its consequences. He consented to terms of the injunction and disobeyed them without just cause or excuse. However rebellious he may feel over being obliged to exact from his customers, regardless of their necessities, prices dictated by producers, supposedly in fair competition with each other, the courts can afford him only such solace as he may derive from reflecting upon the contribution he is making to the general welfare of the state.

The evidence of petitioner's guilt was conclusive. We have considered all the grounds urged upon his application and have found them untenable.

The writ is discharged and the petitioner is remanded.

Wood (Parker), J., concurred.

Vallée, J., concurred in the judgment.