SUNBEAM CORPORATION, an Illinois corporation, Plaintiff,

v.

ECONOMY DISTRIBUTING COMPANY, Inc., a Michigan corporation, and Harrison A. Cowan and Lillian Cowan, individually and as co-partners, dba Economy Linoleum-Window Shade Company and also Economy Lineoleum-Carpet Company, Defendants.

SUNBEAM CORPORATION, an Illinois corporation, Plaintiff,

v.

HALL OF DISTRIBUTORS, Incorporated, a Michigan corporation, Defendant.

Civ. A. Nos. 13900, 14000.

United States District Court
E. D. Michigan, S. D.
March 3, 1955.

Hill, Lewis, Andrews, Granse & Adams, Detroit, Mich., for plaintiff.

Brenner & Schwartz, Detroit, Mich., for defendants Economy Distributing Co., Harrison A. Cowan and Lillian Cowan.

Nathan L. Milstein and Charles Rubiner, Detroit, Mich., for defendant Hall of Distributors, Inc.

FREEMAN, District Judge.

Plaintiff, Sunbeam Corporation, an Illinois corporation, engaged in the manufacture and sale of various electrical appliances commenced these actions against the above corporate defendants seeking to enjoin and recover damages on the theory that defendants have tortiously interfered with plaintiff's contractual relationships. Defendants are engaged in the sale of various types of appliances and household goods including certain of those manufactured and sold by plaintiff.

Plaintiff alleges that it sells its products only to wholesalers and retailers who agree to sign plaintiff's resale price maintenance contracts (hereinafter referred to as fair trade contracts) which contracts exact from such wholesalers and retailers promises not to resell at less than prices stipulated by plaintiff. Furthermore, with respect to wholesalers' fair trade contracts a promise is exacted whereby the latter agree not to resell to retailers who, themselves, have not entered into fair trade contracts with plaintiff. It is alleged, however, that said defendants have been able to secure plaintiff's products by inducing certain of those who have entered into such contracts to breach them and to sell to defendants at less than plaintiff's stipulated fair trade prices. It is admitted that defendants have advertised for sale and have sold plaintiff's products at less than prices stipulated by plaintiff. It is also admitted that defendants have removed from containers of plaintiff's products which they have in their possession all shipping labels thereon. In their answers defendants deny having tortiously interfered with plaintiff's contractual relationships as alleged.

The cases are presently before the Court on an order to show cause why a preliminary injunction should not be issued restraining defendants, in substance, from inducing or attempting to induce, directly or indirectly, wholesalers and retailers of Sunbeam appliances to breach their fair trade contracts with plaintiff by purchasing Sunbeam products from such wholesalers or retailers at less than prices stipulated by plaintiff, or by inducing any person to enter into a fair trade contract with plaintiff for the purpose of supplying any of plaintiff's products to defendants in violation of such contracts; from advertising, offering for sale or selling any of plaintiff's products at less than prices stipulated by plaintiff as to any and all such products heretofore or hereafter acquired by defendants from any contract signer of plaintiff; from purchasing, directly or indirectly, Sunbeam products from any contract signer of plaintiff, where defendants have knowledge of such contracts.

With respect to defendant Economy, it appears that such defendant had knowledge of plaintiff's system of marketing its products exclusively through contract signers, for the secretary-treasurer of

that company, in his deposition, testified that he was generally familiar with plaintiff's fair trade contracts and did not deny that he had received copies of price lists of plaintiff's products which lists gave notice of plaintiff's merchandising methods. He further admitted receiving, in July of 1954, a letter from plaintiff advising Economy of plaintiff's contractual system of selling its products and notifying Economy that by dealing in Sunbeam products without having signed a fair trade contract it had been "tortiously interfering with our Fair Trade System and Fair Trade Rights".

Plaintiff seeks a preliminary injunction on the ground that such alleged tortious conduct on the part of defendants if allowed to continue will undermine plaintiff's system of selling exclusively to contract signers; that because of the continued sale and advertisements of Sunbeam products at less than Sunbeam's stipulated prices plaintiff's contract signers may, at any time, discontinue advertising, demonstrating, displaying or otherwise promoting for sale Sunbeam merchandise. In support of this plaintiff has filed an affidavit of its local sales supervisor in which the supervisor states that the J. L. Hudson Company, one of plaintiff's large retail dealers, has discontinued promoting the sale of Sunbeam merchandise by, among other things, removing from its display counters and from customers' view Sunbeam household appliances because of the advertisement and sale of Sunbeam products in the Detroit area by certain retailers at less than plaintiff's fair trade prices.

In opposing the issuance of the preliminary injunction defendants contend that a preliminary injunction should only be issued to preserve the status quo; that there has been no showing that any irreparable injury will result to plaintiff in the event the injunctions prayed for should not issue; that the fair trade contracts in question are illegal and against public policy; that there has been no instance specifically shown wherein either defendant induced a contract signer to breach his fair trade contract with plaintiff. Defendants further argue that if any injunction should lie, such injunction should not restrain defendants from selling plaintiff's products which they presently have in their possession in that to do so would be to punish and would be beyond the scope of plaintiff's theory.

■ That injunctive relief may be had to restrain third persons from unlawfully inducing another to breach a legal contract to which the latter is a party when it will cause plaintiff irreparable injury has been recognized in Sunbeam Corp. v. Payless Drug Stores, D.C., 113 F.Supp. 31, and cases cited therein.

■ The *status quo* to be preserved by the issuance of a preliminary injunction is the last actual, peaceable, noncontested status which preceded the pending controversy. Steggles v. National Discount Corp., 326 Mich. 44, 45, 39 N.W.2d 237, 15 A.L.R.2d 208. In the cases at bar, such noncontested status was that which existed prior to the alleged tortious interference by defendants with plaintiff's contractual relationships with its wholesalers and retailers.

■ With respect to the question of showing irreparable injury to plaintiff as a necessary prerequisite to the issuance of a preliminary injunction, the Court is of the opinion that this requirement has been sufficiently established. It has been shown by affidavit that at least one large department store in the Detroit area, a contract signer of plaintiff, has declined to promote sales of plaintiff's products because of sales and advertising by others at less than stipulated prices. The Court in attempting to balance the hardship or inconvenience to the parties, from the preliminary showing made, has concluded that irreparable injury to plaintiff will follow from a continuation of the alleged tortious conduct on the part of the defendants. Furthermore, even if a final decree was entered in favor of defendants, the injury which might result to defendants from the issuance of a temporary injunction could be adequately indemnified by bond. See Ohio Oil Co. v.

Conway, 279 U.S. 813, 49 S.Ct. 256, 73 L.Ed. 972; Cohen v. Detroit Joint Board A. C. W. A., 327 Mich. 606, 42 N.W.2d 830.

■■ Defendants argue that assuming, arguendo, that they did so tortiously interfere as alleged, such interference was justified because the contracts in question were illegal. They contend that the public policy of Michigan is clear by virtue of the decision in Shakespeare Co. v. Lippman's Tool Shop Sporting Goods Co., 334 Mich. 109, 54 N.W.2d 268, which declared unconstitutional the Michigan Fair Trade Act, Mich.Stat.Ann. Sec. 19.- 321 et seq., Comp.Laws 1948, § 445.151 et seq., insofar as that act applied to non-signers. It seems clear to this Court, however, that that decision did not declare fair trade contracts, per se, illegal. Nor does the Court find anything in the Shakespeare decision precluding a manufacturer from contracting with respect to resale price maintenance with each and every wholesaler and retailer with whom it chooses to deal, or in declining to deal with any wholesaler or retailer who refuses to so contract. Indeed, it is one thing to say that a manufacturer may not, by a single fair trade contract, fix the price of its products throughout the entire state even as to nonsigners; it is quite another to say that it may not accomplish this end by selling only to those willing to execute fair trade contracts. Whatever illegality the case of W. H. Hill Co. v. Gray & Worcester, 163 Mich. 12, 127 N.W. 803, 30 L.R.A.,N.S., 327, may have imputed to a system of contracts such as exist in the cases at bar seems clearly to have been overcome by the passage of Section 1 of the Michigan Fair Trade Act, Mich.Stat.Ann. Sec. 19.- 321, making such fair trade contracts legal. Furthermore, whether or not such a system of contracts is valid is more properly a question to be decided at the trial on the merits, and meanwhile the Court, as stated, believes defendants can be adequately protected by bond.

■ The last contention of defendants is that there has been no showing of any specific instance wherein defendants or either of them actually induced a contract signer to breach his contract with plaintiff. However, the Court believes that in view of plaintiff's marketing methods the inference is compelling that for defendants to have acquired plaintiff's products they must have acquired them as alleged. With respect to Economy, there is testimony by a contract signer that Economy came to him seeking to purchase plaintiff's goods. While such testimony is lacking with respect to Hall of Distributors, nevertheless, the source of its supply of plaintiff's products and the means of acquiring them are facts peculiarly within the knowledge of the defendants which they have not seen fit to divulge although confronted with the allegations in plaintiff's complaint. It is argued that the term "inducement" requires active as contrasted with mere passive participation in order to be guilty of the tort alleged, and that mere nonfeasance will not subject a party to liability. But see Wells & Richardson Co. v. Abraham, C.C., 146 F. 190, affirmed 2 Cir., 149 F. 408. Again, this is a matter peculiarly within the knowledge of the defendants, which they have not attempted to show either as justification or as lawful procurement of plaintiff's merchandise. That the products in question might have been legally acquired cannot be doubted. But in view of the inescapable inference referred to, plus defendants' silence as to their source and manner of procurement, the Court, at this juncture, is of the opinion that a sufficient showing has been made. It seems to the Court that if the products in question were obtained passively or lawfully defendants, when faced with the allegations and prayer of plaintiff's complaint, would have attempted to make such a showing rather than merely hint that such was the case.

A preliminary injunction will, therefore, be issued in each case to the same extent as the temporary restraining orders presently in effect which, in substance, restrain defendants from advertising for sale plaintiff's products at less than the fair trade price, from inducing

or attempting to induce either wholesale or retail contract signers of plaintiff to breach such contracts with the latter, from selling plaintiff's products hereafter acquired at less than the fair trade price. The Court is of the opinion that it would be beyond the scope of plaintiff's theory to enjoin the sale of plaintiff's products heretofore acquired.

An appropriate order may be presented.