## Bissell Carpet Sweeper Co. v. Cooper

*Wolf, Block, Schorr & Solis-Cohen,* for plaintiff.
*Harold J. Elkman,* for defendants.

CARROLL, P. J., July 22, 1958.—In this equity action plaintiff, Bissell Carpet Sweeper Company, a corporation organized and existing under the laws of the State of Michigan, seeks injunctive relief against defendants, Sidney Cooper and Paul S. Dinnerman, individually and trading as Silo Discount House, for

making retail sales of household appliances below plaintiff's established fair trade prices.

Following a preliminary hearing held on April 28, 1958, at which both parties were present and represented by counsel, a temporary restraining order was entered by the court enjoining defendants from selling merchandise manufactured by the Bissell Carpet Sweeper Company below the established prices set by plaintiff for the State of Pennsylvania. Thereafter, defendants filed an answer to plaintiff's complaint and the matter came before the court for final hearing on May 20, 1958.

The question before us is one of first impression before a Pennsylvania court and involves the effect of the amendment of May 25, 1956, P. L. (1955) 1756, 73 PS §8, to the Pennsylvania Fair Trade Act of June 5, 1935, P. L. 266, 73 PS §7 et seq. Plaintiff's complaint alleges the following facts:

Bissell Carpet Sweeper Company, a Michigan corporation, manufactures and sells various types of carpet sweepers and related products under its trade name and trademark "Bissell". Defendant partnership is composed of the two individual defendants who maintain four retail establishments under the trade name Silo Discount House in Philadelphia and environs.

Bissell carpet sweepers and related products are sold in substantial quantities in the City of Philadelphia and elsewhere in Pennsylvania in competition with similar commodities manufactured by other concerns, and have been widely advertised and promoted at great financial cost to plaintiff. As a result of this merchandising activity the trade name and trademark have acquired extensive and valuable good will. Bissell has entered into written contracts with various retailers in Pennsylvania including many in Philadelphia.

Although plaintiff does not allege the execution of such a contract with defendants it does aver that de-

fendants had notice of the existence of these fair trade contracts setting the retail price for four models of carpet sweepers, one model of rug shampoo machine and accompanying shampoo mix. These models, which are the subject of this litigation, bear the following numbers and corresponding retail prices:

Model No. 20 Continental Carpet Sweeper. . .$23.95
Model No. 30 Grand Rapids Carpet Sweeper. . 16.35
Model No. 40 Sweep Master Carpet Sweeper. 15.95
Model No. 50 Breeze Carpet Sweeper. . . . . . . 12.95
Model No. 200 Bissell Shampoo Master. . . . . 14.95
Model No. 300 Shampoo Master Liquid Rug Cleaner . . . . . . . . . . . . . . . . . . . . . . . . 1.98

Plaintiff concludes its complaint by alleging willful violation of these fair trade prices by defendants despite notice to them to cease and desist and prays for injunctive relief restraining defendants from selling these items at less than the fair trade prices and also asks reimbursement for damages in such amount as the court may deem just and equitable.

Defendants filed an answer in which they admitted all of the foregoing factual allegations. They deny plaintiff's right to the relief requested, however, and base their defense exclusively on the amendment of May 25, 1956, P. L. 1756, 73 PS §8, to the Pennsylvania Fair Trade Act of June 5, 1935, P. L. 266, 73 PS §7 et seq., which precludes complainants from enforcing a fair trade contract if it has failed to take reasonable and diligent steps to prevent others in a competitive position with defendants from continuing to advertise and sell the same fair trade items at less than the fair trade price.

At the preliminary hearing plaintiff proved defendants had sold merchandise at less than the fair trade prices and counsel for defendants readily admitted this practice by his clients. At that time counsel stated that defendants were resisting this action because of

Bissell's failure to enforce the act against similar retailers in a competitive position with defendants and requested continuance of the hearing to afford them an opportunity to give written notice to plaintiff of these violators so that plaintiff might proceed against them. The continuance was granted for that purpose.

At the final hearing plaintiff's case was developed by its district sales manager and a representative of the detective agency employed by it to investigate retailers. Neither of defendants testified but relied upon the testimony of two employes who gave evidence about sales of items manufactured by plaintiff which were sold at less than fair trade prices in certain retail establishments in Philadelphia. Defendants did not attempt to prove notice to plaintiff of any other violators nor did it present such list to them for investigation. . . .

## Discussion

The issue involved in this dispute is a narrow one. Defendants admit the validity of the fair trade agreement entered into between plaintiff and various retailers in Pennsylvania. Although defendants are nonsigners of the agreement, they do not raise this issue as a defense. The recent decision of the Pennsylvania Supreme Court in the case of Olin Mathieson Chemical Corporation v. L & H Stores, Inc., 392 Pa. 225 (1958), upholds the validity of the Act of June 5, 1935, P. L. 266, 73 PS §7 et seq., which enables manufacturers with fair trade agreements to enforce the terms of those agreements against nonsigners purchasing merchandise in an area in which they have fair trade contracts with other dealers.

Defendants did not deny any of the allegations nor at the trial of the cause did they seek to avoid the impact of plaintiff's charges. Their defense was based solely on the 1956 amendment to the Act of 1935 which provides as follows:

"Wilfully and knowingly advertising, offering for sale, or selling any commodity at less than the price stipulated in any contract entered into pursuant to the provisions of section one of this act, whether the person so advertising, offering for sale, or selling is, or is not, a party to such contract, is unfair competition and is actionable at the suit of such vendor, buyer or purchaser of such commodity. It shall, however, be a complete defense to such an action for the defendant to prove that the party stipulating such price, after at least seven days written notice given by the defendant prior to the commencement of such action, has failed to take reasonable and diligent steps to prevent the continuation of such advertising, offering for sale or selling, by those in competition with the defendant, who were specified in such notice": As amended, May 25, 1956, P. L. 1756, sec. 2.

Although defendants' request for a continuance of the preliminary hearing was granted so that notice of other violators could be given to plaintiff, defendant failed to prove such notice or any other action on their part which is a condition precedent before a party may avail itself of the defense provided in the legislation quoted above. It should be observed that notice after suit has been filed would not be sufficient under the terms of the statute, nevertheless plaintiff made no objection to defendants' request at the initial hearing and the court granted the requested leave to defendants to prepare such notice. It suffices to say that defendants' failure to prove evidence of such notice can only permit us to conclude that notice was never given to plaintiff either before suit or after suit.

At the trial plaintiff's principal witness was Clarence A. Paulson, district sales manager in the Philadelphia area, who testified at length about the efforts of plaintiff corporation to enforce the fair trade agreements.

Defendants produced two employes who testified about purchases of fair trade items manufactured by plaintiff below fair trade prices in several stores in the Philadelphia area. When the first of these employes, Peter S. Brauer, was asked by the court whether any of the four concerns he mentioned were competitors of Silo Discount House he replied: "I don't think they give us much competition." Thus, it would seem that apart from the failure to give notice which was a fatal defect under the statute, the admission that the other violators are not in a competitive position with defendants removes them from the orbit of the statute's protection. Indeed, plaintiff in rebuttal attempted to show through testimony by an employe of the LeStrange Detective Agency and by Mr. Paulson that the few offenders whom plaintiff knew about had been followed up and that it was diligently attempting to stamp out violations. Plaintiff produced credible evidence of bona fide attempts to enforce the act and negates any inference that defendants are being singled out in a discriminatory manner.

Certainly in view of defendants' failure to comply with the statute, they cannot seriously contend that plaintiff has no right to injunctive relief. The language of the act cannot be construed in a manner which does violence to its plain meaning. It is crystal clear in its provisions namely that notice must be given in strict compliance with its terms; secondly, that those who seek its protection must establish that others in competition with them have been permitted to disregard the agreements setting forth fair trade prices.

A research of the case law in Pennsylvania reveals that this is a case of first impressions. The Supreme Court in the case of Olin Mathieson Chemical Corporation v. L & H Stores, Inc., supra, did not determine the effect of the 1956 amendment in view of the fact that the complaint in that case predated the passage of the

amendment. The only other Pennsylvania case discussing this amendment was the case of Sunbeam Corporation v. Hess Brothers, 11 D. & C. 2d 643 (1957). Procedurally the matter came before them on preliminary objections and although the issue differed from that in the case at bar, President Judge Henninger's interpretation of the amendment appears to us to be correct.

In sustaining the objection to defendants' new matter which interposed the defense that plaintiff had to take reasonable and diligent steps to prevent those in competition with defendant from selling at less than fair trade prices, the court stated on page 652:

"Assuming that mere averment of nonregulation could be proved under a general statement to that effect, we are of the opinion that the language quoted calls for specification of persons and dates if that absolute defense is being relied upon."

The case of General Electric Co. v. Hess Bros., Inc., 155 F. Supp. 57 (E. D. Pa.), involved a similar issue. In that case Judge Van Dusen of the United States District Court for the Eastern District of Pennsylvania held that plaintiff manufacturer was entitled to injunctive relief.

In dismissing defendant's contention that plaintiff was not entitled to injunctive relief because of its failure to enforce the act uniformly, the court stated the following:

"[7.] It has been consistently recognized by courts asked to enforce fair trade laws, such as the Pennsylvania Act (73 P.S. §7 ff.) that the manufacturer is not entitled to an injunction unless he has reasonably and diligently enforced the fair trade prices specified by him. As stated in General Electric Co. v. R. H. Macy & Co., 1951, 199 Misc. 87, 92, 103 N.Y.S. 2d 440, 446-447, which is perhaps the leading case on this subject:

" 'In establishing this requirement the courts have

held that it is not necessary that there be simultaneous enforcement against all violators nor that the price structure be perfect. . . . There, the court laid down the principle that in order to avail himself of the benefits of the statute, the producer or plaintiff must make a sincere and diligent effort to prevent price cutting of branded products, through legal process if necessary.' "

Although this decision is not binding on us we agree with Judge Van Dusen's analysis of the new section which the legislature added to the statute. In reviewing the legislative history as an aid to interpretation he stated the following:

"Act 589 of the 1955 General Assembly (Act of May 25, 1956, P. L. (1955) 1756, 73 P.S. §8, which is referred to in this Discussion as Act 589) was signed by the Governor on May 25, 1956, but did not become effective until September 1, 1956, due to the absence of any language stating an effective date and in view of the following language of the Pennsylvania Statutory Construction Act, as amended (46 P.S. §504).

" 'All laws hereafter enacted finally at a regular session of the Legislature, . . . shall be in full force and effect from and after the first day of September next following their final enactment, unless a different date is specified in the law itself. . . .'

"(9)   Also assuming the Act took effect in May 1956, the hearing judge finds that the phrase, 'after at least seven days written notice given by the defendant prior to the commencement of such action,' contemplates that a retailer such as this defendant cannot rely on the 'complete defense' provided for in the Act unless he has given the manufacturer notice of sales below the specified minimum prices by his competitor or competitors at least seven days before suit has been instituted. (The hearing judge reaches this conclusion on the basis of the letter dated 8/1/57 of counsel for plaintiff.) As

stated above plaintiff has taken reasonable and diligent steps to enforce his price schedule and such steps need not be taken within seven days of the notices received from defendant.

"Since defendant disagrees with these conclusions and an appellate court may disgaree with the hearing judge's conclusions on these points, the possible application of the Act to this factual situation is considered by the hearing judge in the balance of this Discussion assuming the Act took effect on the date of its approval by the Governor (May 25, 1956).

"There is some doubt as to whether defendant has established the 'complete defense' provided for by Act 589 of the 1955 General Assembly, which added this sentence to the Pennsylvania Fair Trade Act (73 P.S. §8):

" 'It shall, however, be a complete defense to such an action for the defendant to prove that the party stipulating such price, after at least seven days written notice given by the defendant prior to the commencement of such action, has failed to take reasonable and diligent steps to prevent the continuation of such advertising, offering for sale or selling, by those in competition with the defendant, who were specified in such notice.'

"These principles seem pertinent in interpreting this Act:

"A. Since the Governor had vetoed for other reasons a bill (H.B. 1418) passed by this session of the General Assembly, which used the phrase 'effective steps to insure compliance,' rather than the words 'reasonable and diligent steps' contained in Act 589, the General Assembly must have intended to require plaintiff to take steps which were somewhat less than those 'effective to insure compliance.'

"B. By creating the 'complete defense', the General Assembly recognized that a violator, whose conduct a

competitor thinks is important enough to call to the attention of the manufacturer, is having a significant effect on the fair trade price structure. Under such circumstances, the manufacturer fails to take effective steps to see that such violator conforms to the minimum price schedule at the risk that what he has done may not be considered reasonable and diligent.

"C. The judicial definition of the phrase 'reasonable and diligent' by other courts in fair trade cases is some evidence of what the General Assembly contemplated would be required under this language.

"D. The Legislature would not have passed this Act in order to require the manufacturer to take some action in seven days and then cease his reasonable and diligent steps. The statutory language contemplates that the manufacturer should investigate and follow up vigorously violators of whom they receive notice from their retailers.

"Applying these principles to this record, the hearing judge believes that plaintiff should place more evidence on the record of its enforcement activities against certain violators of whom defendants gave it notice prior to institution of this action, before being entitled to a permanent injunction, as more fully explained in the letter to counsel of July 22, 1957.

"Defendant's motion to vacate the temporary injunction will be denied and the matter will be set down for addition of evidence to the record in September, 1957 in accordance with the letter of July 22, 1957, and this Discussion."

Similarly, in the case at bar, Mr. Paulson's evidence, which was uncontradicted, and the evidence of the LeStrange Detective Agency clearly indicate that plaintiff has been diligently attempting to enforce the contracts and that it has not sought this relief against defendants by way of discrimination or punishment.

Two more points merit brief mention.

First, plaintiff's prayer for damages is not supported by any evidence and therefore monetary relief will not be granted.

Second, defendants' contention that an injunction is an improper remedy in this case has been fully answered by the Supreme Court in the Olin Mathieson decision, supra, and need not be elaborated upon here.

For these reasons we make the following

### Conclusions of Law

1. The court has jurisdiction over the parties and the subject matter.

2. Defendants have violated plaintiff's fair trade contracts.

3. Plaintiff is entitled to enforce its fair trade contracts against defendants even though defendants are nonsigners.

4. Plaintiff is entitled to injunctive relief.

Accordingly, we make the following

### Decree Nisi

And now, to wit, July 22, 1958, this matter having come on to be heard upon consideration of the pleadings, testimony, applicable statutes and discussion, it is ordered, adjudged and decreed:

1. That defendants be and they are hereby enjoined from offering for sale or selling any article bearing plaintiff's name or trademark at less than the minimum fair trade price stipulated for resale in plaintiff's contracts with other retailers in and about the City of Philadelphia.

2. That defendants pay the cost of these proceedings.

The prothonotary will enter this decree nisi and give notice thereof to the parties or their attorneys, and unless exceptions thereto are filed within 20 days, this decree shall become final.