OLIN MATHIESON CHEMICAL CORPORATION, New York, New York

v.

Herman J. COHEN, an individual trading as J. B. N. Sales, Philadelphia, Pennsylvania.

Civ. A. No. 35982.

United States District Court
E. D. Pennsylvania.

Sept. 18, 1964.

Angus M. Russell and Morgan, Lewis & Bockius, Philadelphia, Pa., for plaintiff.

Irving Warren Singer, Philadelphia, Pa., for defendant.

JOHN W. LORD, Jr., District Judge.

This matter is presently before the Court for disposition of the Plaintiff's

Motion for Preliminary Injunction. Inasmuch as the facts are not disputed, and since both counsel agreed that there were no additional facts to be considered at the time of the hearing or thereafter and that there was only a question of law involved, upon pleadings and proof, this Court accordingly makes the following

## FINDINGS OF FACT

1. OLIN MATHIESON CHEMICAL CORPORATION, Plaintiff, (hereinafter called "Plaintiff") is a corporation duly organized and existing under the laws of the State of Virginia, maintaining an office for the conduct of business at 275 Winchester Avenue, New Haven, Connecticut, and its principal place of business in New York, New York, and its business consists, among other things, of the distribution and sale in both interstate and intrastate commerce, in Pennsylvania, of firearms, ammunition, related equipment, and other commodities under Plaintiff's trademark "WINCHESTER", and various other trademarks, brands and names associated with Plaintiff.

2. HERMAN J. COHEN, Defendant (hereinafter called "Defendant"), is an individual trading as "J. B. N. SALES", maintaining places of business at 5707 Warrington Avenue, Philadelphia, Philadelphia County, and elsewhere in Pennsylvania, which business consists, among other things, of selling at retail in Pennsylvania products bearing Plaintiff's name, brands and trademarks.

3. This action is brought to restrain alleged unfair competition arising under the Pennsylvania Fair Trade Act, the Act of June 5, 1935, P.L. 266, Sections 1 and 2 as amended (73 P.S. §§ 7 and 8) and sanctioned by the Miller-Tydings Act, 15 U.S.C.A. § 1 and McGuire Act, 15 U.S.C.A. § 45.

4. The matter in controversy exceeds, exclusive of interest and costs, the sum of Ten Thousand Dollars ($10,000), being the goodwill pertaining to Plaintiff's business, especially that portion based upon Plaintiff's rights under certain lawful agreements made pursuant to the Fair Trade Act of Pennsylvania.

5. Plaintiff's products, including products which are sold under its trademark and trade name, "WINCHESTER", and various other trademarks, brands and names associated with Plaintiff, are all sold in substantial quantities to retail dealers throughout the Commonwealth of Pennsylvania, and are in turn resold by retail dealers to the public.

6. Said trademark and trade name is the exclusive property of the Plaintiff, being registered in the United States Patent Office, and is now outstanding, validly subsisting, unrevoked and uncancelled, and Plaintiff is the owner thereof.

7. The products bearing the said trademark and trade name have a good reputation and standing among the public generally, including the purchasing public throughout the Commonwealth of Pennsylvania. Plaintiff has built up through the high quality of its products, together with extensive advertising, a good will appertaining to such products and to said trademark and trade name, with retailers and the purchasing public of Pennsylvania and elsewhere.

8. In accordance with the provisions of the Pennsylvania Fair Trade Act (Act of June 5, 1935, P.L. 266, as amended), Plaintiff and Defendant, as of September 15, 1962, entered into a written agreement whereby Defendant agreed that the resale of the Plaintiff's products should be in accordance with the provisions of the Pennsylvania Fair Trade Act, and should not be below the stipulated retail price as set forth in price lists published by Plaintiff from time to time; and Defendant agreed not to advertise, offer for sale, or sell in Pennsylvania products of Plaintiff at prices less than the retail selling prices at that time stipulated therefor by Plaintiff.

9. By letter, dated February 6, 1964, and sent by registered mail, postage prepaid, counsel for Plaintiff demanded that Defendant cease and desist from violating the provisions of the Pennsylvania Fair Trade Act by selling Plaintiff's products at prices less than those stipulated in Plaintiff's published price lists then in effect.

10. On February 28, 1964, about 2:03 P.M., at Defendant's place of business in the Green Dragon Farmers Market, Route 222, Ephrata, Lancaster County, Pennsylvania, a representative of Plaintiff purchased one Winchester 30–30 Calibre Lever Action Carbine, Plaintiff's Model 94 for a price of $62.95 (plus $3.15 Pennsylvania sales tax), the stipulated retail price for said item at that time being $83.95; said representative took delivery of said item on March 6, 1964, at about 1:45 P.M. at Defendant's said place of business.

11. In selling Plaintiff's products below Plaintiff's published stipulated retail prices as aforesaid, Defendant was not closing out its stock of goods for the purpose of discontinuing the sale of such products; said goods were not damaged or deteriorated in quality and sold with notice to the public thereof; nor were said sales made by an officer acting under orders of any court or in execution of any writ or distress.

12. The amount of damages sustained by Plaintiff as a result of Defendant's conduct as above complained of cannot be measured with exactness and precision.

13. The conduct of Defendant complained of will, if permitted, result in continuing and irreparable injury to Plaintiff for which it has no adequate remedy at law.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction of the parties and of the subject matter.

2. The Fair Trade Act of Pennsylvania, and contracts entered into pursuant thereto, are valid and enforceable between the parties to such contracts.

3. Plaintiff has entered into a written contract with the Defendant whereby the Defendant agreed that the resale of Plaintiff's products should not be below the stipulated resale price as set forth in price lists published by the Plaintiff from time to time, and said contract is in conformity with the provision of the Pennsylvania Fair Trade Act (73 P.S. § 7 et seq.), and Plaintiff is entitled to the protection of said act.

4. The products of Plaintiff, trademarked "WINCHESTER" and subject to said contract are in fair and open competition with commodities of the same general classes produced by others.

5. By wilfully and knowingly selling fair traded products manufactured by Plaintiff and trademarked "WINCHESTER" at less than the stipulated resale prices, Defendant has engaged in unfair competition and has damaged the good will owned by Plaintiff and appertaining to said trademark "WINCHESTER".

6. Plaintiff has established a cause of action under the aforementioned Fair Trade Act of Pennsylvania.

7. Plaintiff has suffered irreparable harm by reason of the acts of Defendant complained of, has no adequate remedy at law, and is entitled to a decree permanently enjoining Defendant, its agents, employees and other persons acting under the authority or control of Defendant, from advertising, offering for sale or selling at retail commodities manufactured by Plaintiff and trademarked "WINCHESTER" at prices which are less than the stipulated resale prices now or hereafter established therefor by Plaintiff for the sale of such products in Pennsylvania.

## DISCUSSION

On June 16, 1964, the Plaintiff filed a summons in the United States District Court for the Eastern District of Pennsylvania and thereafter filed a Complaint and prayed for the Court to grant a Preliminary Injunction against the Defendant from selling or advertising the Plaintiff's products at less than stipulated prices.

Upon an order for hearing for the Preliminary Injunction, a hearing was set and held on August 4, 1964. Since both counsel agree that there is only a question of law to be determined, by further agreement this hearing was treated by the Court as a final hearing.

After a review of the pleadings and the facts developed at the hearing it is

apparent that the primary question to be resolved by this Court is whether or not the written resale price maintenance agreement entered into by the parties hereto is enforceable against the Defendant.

At the outset, we are met with Defendant's contention that the Pennsylvania Supreme Court has ruled, in Olin Mathieson C. Corp. v. White Cross Stores, Inc., 414 Pa. 95, 199 A.2d 266 (1964), that the Pennsylvania Fair Trade Act is unconstitutional not only as to a non-signer of a Fair Trade Agreement but, by implication, agreements wherein a defendant-retailer has signed.[1]

The basis for this contention is the argument that the White Cross case struck down the non-signer clause of the Pennsylvania Fair Trade Act, with the result that the entire purpose and essence of the Act has been abrogated and declared illegal.[2] It reasons that the nucleus of Fair Trade Acts has been the enactment and enforceability of the non-signer clause. It is for this reason that retailers have been encouraged to sign such resale price maintenance agreements. Since, Defendant argues, a plaintiff can no longer enforce the non-signer's clause, the party signing has not in effect received that for which he has bargained. Further, the Defendant contends, the Plaintiff can no longer take steps to prevent those with whom Defendant is in competition, and who have not signed contracts, from continuing to offer the Plaintiff's product at less than the stipulated minimum price. Under such circumstances, the Defendant concludes, the purpose of the Act has failed and accordingly it is vain, meaningless and opposed to the intent of the legislature to bind only the signing party.

To summarize, the thrust of the Defendant's position is that the decision of the Supreme Court of Pennsylvania in the White Cross case rendered the resale price maintenance provision of fair trade agreements unenforceable not only as to non-signers but also as to signers of such agreements.

We do not agree. As set forth in the Plaintiff's brief in support of its motion:

"A reading of the White Cross opinion shows that the Supreme Court was careful to state, at both the beginning and end of its opinion, that it did not intend to hold the resale price maintenance provisions of the Act unconstitutional except as to non-signers. In the opening sentence of the opinion, at 414 Pa. 96 [199 A.2d 266], the Court stated:

" 'The single question presented for determination by this appeal is. the constitutionality of the Pennsylvania Fair Trade Act * * * as applied to the non-signers of "fair trade" price maintenance contracts.'

"Finally, after discussing the basis of the decision, the Court, [414 Pa.] at page 100 [199 A.2d at page 268] concludes:

" 'The Pennsylvania Fair Trade Act, as applied to non-signers of price maintenance contracts, is, therefore, unconstitutional.' "

An analysis of the White Cross case, with particular reference to the above-noted passages, justifies the view that the Pennsylvania Supreme Court did not rule upon the constitutionality of a situation where the purchasers of Plaintiff's products have bound themselves in writing to maintain minimum sales prices. That the Court limited its decision by ad-

---

1. This decision was a reversal of Burche Co. v. General Elec. Co., 382 Pa. 370, 115 A.2d 361 (1955), which had held the Pennsylvania Fair Trade Act constitutional as to non-signers.

2. Defendant's Brief Contra Preliminary Injunction, sets forth that "the purpose of Fair Trade is to prevent the cutting by 'any dealer' of the established price of any commodity identified by the trademark, brand or name of the producer," citing Olin Mathieson Chemical Corp. v. L. & H. Stores, Inc., 392 Pa. 225, 139 A. 2d 897 (1958); Accord: Bristol-Myers Co. v. Lit Bros., Inc., 336 Pa. 81, 6 A.2d 843 (1939).

dressing itself specifically to the question of the application of the statute to non-signers is clear. A broader interpretation cannot justifiably be read into the opinion.

Furthermore, this Court is of the opinion that the non-signer provision of the Fair Trade Act, consisting of the phrase "whether the person so * * * selling * * * is not, a party to such contract" in Section 2, is severable from the remainder.

■ First, we recognize that it is now well accepted that an act of the legislature is presumed to be constitutional in all respects. See Comm. v. Moir, 199 Pa. 534, 49 A. 351, 53 L.R.A. 837 (1901). If an act, or a part of it, is not expressly overruled, it should not, by implication, be so considered. Section 55 of the Statutory Construction Act, 46 P.S. § 555 being declaratory of the common law (See Cooley's Constitutional Limitations, 246–248 (7th Ed. 1903)), provides, in essence, that a statute whenever possible, must be construed as severable:

"The provisions of every law shall be severable. If any provision of a law is found by a court of record to be unconstitutional and void, the remaining provisions of the law shall, nevertheless, remain valid, unless the court finds the valid provisions of the law are so essentially and inseparably connected with, and so depend upon, the void provision, that it cannot be presumed the Legislature would have enacted the remaining valid provisions without the void one; or unless the court finds the remaining valid provisions, standing alone, are incomplete and are incapable of being executed in accordance with the legislative intent."

Secondly, the Fair Trade Act itself contains the following provision which evidences the legislative intent with respect to severability:

"If any provision of this act is declared unconstitutional, it is the intent of the Legislature that the remaining portions thereof shall not be affected, but that such remaining portions shall remain in full force and effect." Act of June 5, 1935, P.L. 266 § 5, 73 P.S. § 11.

The Defendant asserts, as previously detailed, that with the now declared unconstitutionality of the non-signer clause, the purpose of the Act has failed.

Here, again, we disagree. The rationale of the Court's opinion is directed at the situation where a manufacturer and a retailer, by execution of a resale price maintenance agreement, could impose their will, and the prices thereby established, upon retailers not a party to such agreements. It was this power of a manufacturer to fix prices which would govern others, not a party to the agreement, which was found to be unlawful.

The situation of the signing retailer, however, is entirely different. He does not have imposed upon him a price set without his consent. He is bound only to a price because he has agreed to it.

This simple, yet logical reasoning, supports our view that the applicability of the Fair Trade Act to non-signers is a matter separate and distinct from the application of the statute to those who have chosen to bind themselves contractually with a manufacturer of a fair trade product. We note further that the provisions of Section 1 of the Act, which sets forth a general policy declaring price resale agreements to be valid, are clearly unrelated to any provision of the statute seeking to make such agreements applicable to non-signers.

As succinctly and well stated by counsel for the Plaintiff: "No legislative intent or statutory scheme is thwarted by permitting manufacturers of trademarked products to continue to enter into price resale maintenance agreements and to enforce those agreements against the parties bound to them by contract. The deletion of the non-signer provision merely changes the application of the statute to a voluntary, rather than a compulsory, basis." In this, we fully agree.

While there are no cases in this jurisdiction on this construction of the Act,

the authorities in other jurisdictions have ruled in conformity with the result herein on this precise question. General Electric Co. v. American Buyers Cooperative, 316 S.W.2d 354 (Ky.1958); Bissell Carpet Sweeper Co. v. Shane Co., 237 Ind. 188, 143 N.E.2d 415 (1957) and Sunbeam Corp. v. Economy Distributing Co., 131 F.Supp. 791 (E.D.Mich.1955).

## ORDER

And now, this 18th day of September, A.D.1964, after hearing had in the above matter, it is ordered and decreed that a Permanent Injunction issue enjoining Defendant, its agents, employees and other persons acting under the authority or control of Defendant, from advertising, offering for sale or selling at retail commodities manufactured by Plaintiff and trademarked "WINCHESTER" at prices which are less than the stipulated resale prices now or hereafter established therefor by Plaintiff for the sale of such products in Pennsylvania, and it is so ordered.